UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,     : 21-cr-00054-DG-1
                               :
                               :
     - versus -              : U.S. Courthouse
                               : Brooklyn, New York
                               :
DAVID GENTILE,                 : February 9, 2021
                 Defendant     :
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
(VIA VIDEO CONFERENCE)


**For the Government**:        **Seth DuCharme, Esq.**
                                **Acting U.S. Attorney**

                            BY: **Lauren Howard Elbert, Esq.**
                                  **Artie McConnell, Esq.**
                                  **Garen S. Marshall, Esq.**
                                  Assistant U.S. Attorney
                                  271 Cadman Plaza East
                                  Brooklyn, New York 11201


**For the Defendant**:         **Matthew Menchel, Esq.**
                                **William F. McGovern, Esq.**
                                Kobre & Kim LLP
                                800 Third Avenue Floor 6
                                New York, NY 10022



**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

                              Proceedings

1           THE CLERK: Criminal Cause for an Arraignment.

2    It's 21-cr-54, United States v. David Gentile.

3           Counsel, state your appearances please,

4    starting with the government.

5           MS. ELBERT:  Good morning, your Honor.

6           Lauren Elbert, Artie McConnell and Garen

7    Marshal for the United States.

8           MR. MENCHEL:  Good morning, your Honor.

9           Matthew Menchel and William McGovern from the

10   law firm of Kobre & Kim on behalf of Mr. David Gentile.

11          THE COURT:  Good morning, Mr. Gentile.

12          The purpose of today's proceeding, sir, is to

13   make sure that you understand the nature of the charges

14   being made against you by the United States, and to make

15   sure that you understand that you have certain

16   constitutional rights.

17          First, you have the right to be represented by

18   an attorney at today's proceeding and at all future

19   proceeding before the Court and you have retained Mr.

20   Menchel and Mr. McGovern.  If at any point in time, you

21   are unable to afford counsel, you may make an application

22   to the Court and the Court will appoint counsel.

23          You have the right to remain silent.  If you

24   started to make a statement, you may stop.  Anything you

25   say to anyone other than your attorneys can be used

3

Proceedings

1  against you.

2          Do you understand that you have the right to

3  counsel and the right to remain silent?

4          THE DEFENDANT:  I do.

5          THE COURT:  Mr. Gentile, the purpose again is

6  to make sure you're aware of the charges and the grand

7  jury has returned a five-count indictment against you.

8          Have you had the opportunity to review the

9  indictment with your attorney?

10          THE DEFENDANT:  I have.

11          THE COURT:  Do you understand the charges that

12  are being made against you?

13          THE DEFENDANT:  I do.

14          THE COURT:  And Mr. Menchel, have you had the

15  opportunity to review the indictment with your client?

16          MR. MENCHEL:  Yes, your Honor.

17          THE COURT:  And do you believe Mr. Gentile

18  understands the charges that are being made against him?

19          MR. MENCHEL:  Yes, your Honor.

20          THE COURT:  And do you wish me to read the

21  indictment aloud?

22          MR. MENCHEL:  No, your Honor.  We waive the

23  reading of the indictment.

24          THE COURT:  And is your client prepared to

25  enter a plea?

4

Proceedings

1        MR. MENCHEL:  He is, your Honor.

2        THE COURT:  And the plea is?

3        MR. MENCHEL:  Not guilty.

4        THE COURT:  A not guilty plea shall be entered

5   on behalf of David Gentile to all counts of the

6   indictment.  I have also been -- Mr. Gentile, let me back

7   up, I'm sorry.

8        Under normal circumstances, you would be in an

9   open courtroom, you would be there with your attorneys

10  and the United States Attorney would be there as well but

11  because of the pandemic, you are proceeding today by

12  video conference.

13       Do you consent to proceed today by video

14  conference, sir?

15       THE DEFENDANT:  I do.

16       THE COURT:  Thank you.  I've been presented

17  with a couple of things, let's first go to the exclusion

18  of time.  I believe that there has been an exclusion

19  entered by administrative order before Judge Mauskopf

20  left through March 1st, is that correct, Ms. Elbert?

21       MS. ELBERT:  I believe that is correct, your

22  Honor, but as belt and suspenders, we also before the

23  Court a written application for an order of excludable

24  delay in view of the complexity of the case, excluding

25  time between today's date and February 16th when we're

5

Proceedings

1    due to appear in front of Judge Gujarati and I've

2    confirmed with her clerk that Judge Gujarati did not

3    object to the imposition of an order of excludable delay

4    on the consent of the parties.

5           THE COURT:  And generally speaking, Mr.

6    Gentile, if you're released on bail, you're allowed to

7    enter a paper order but because I was going to have you

8    before me, I want to make sure that you understand the

9    nature of the request and the consequences.

10          So permit me to tell you that the government

11   has seventy days under the Speedy Trial Act to commence

12   the trial against you on those charges and that seventy

13   days starts to count from the arraignment on the

14   indictment which we just entered your not guilty plea on

15   the indictment moments ago.

16          If the government does not commence the trial

17   within seventy days, your attorney can come into court

18   and ask that the charges against you be dismissed as a

19   violation of your right to a speedy trial.

20          This application is stopping the seventy-day

21   clock today, February 9th and will not restart the clock

22   until February 16th when you are going to be appearing

23   before the Honorable Diane Gujarati.

24          Do you understand this application, Mr.

25   Gentile?

6

Proceedings

1              THE DEFENDANT:  I do, your Honor.

2              THE COURT:  And have you discussed this with

3    your attorney?

4              THE DEFENDANT:  I have.

5              THE COURT:  And do you have any questions for

6    the Court?

7              THE DEFENDANT:  I do not.

8              THE COURT:  And Mr. Menchel, did you review

9    this application and order with your client?  You're

10   muted.

11             MR. MENCHEL:  Sorry.  I did, your Honor.

12             THE COURT:  And do you believe he understands

13   the application and its consequences?

14             MR. MENCHEL:  I do.

15             THE COURT:  Then I'm going to enter this order

16   but I do think, Ms. Elbert, that if everybody is going to

17   do belt and suspenders, then what's the point of the

18   administrative order by the chief judge of the court?

19             MS. ELBERT:  Understood, your Honor.

20             THE COURT:  So I will enter this order and I

21   take it then that the next appearance is going to be

22   before Judge Gujarati on the 16th.

23             MS. ELBERT:  That's correct, on the 16th at 11

24   a.m.

25             THE COURT:  Okay.  So Mr. Gentile, you were

7

Proceedings

1   arrested in another district and then they set bail and

2   so tell me, government, what is your position on the

3   question of detention or bail?

4             MS. ELBERT:  Yes, we have a bail proposal on

5   consent of the parties that would maintain Mr. Gentile's

6   release on a bond in the amount of $500,000, to be

7   secured by the property located at 7 Plymouth Road in

8   Manhasset, New York.

9             We've agreed that defense has 14 days to file

10   the confession of judgment for that property with the

11   Court and that bond will be Mr. Gentile's wife, who I

12   understand is available for the conference today.

13             THE COURT:  Thank you.  And Mr. Gentile, your

14   wife is on the line, as well?

15             THE DEFENDANT:  Yes, on video -- on audio,

16   correct.

17             THE COURT:  And what is her first name?

18             THE DEFENDANT:  Joanne.

19             THE COURT:  And she is on the feed, as well?

20             THE DEFENDANT:  I believe so.  Yes.

21             THE COURT:  So Mrs. Gentile, I'm sorry for the

22   circumstances that bring you before the Court but I am

23   going to ask for my deputy to swear you in.

24             Were there other suretors that are on this

25   phone, Ms. Elbert?

8

Proceedings

1          MS. ELBERT:  No, your Honor.

2          THE COURT:  It's only Mr. Gentile and Mrs.

3    Gentile.

4          MS. ELBERT:  Correct.

5          THE COURT:  And the other thing, were travel

6    restrictions, is that correct, to the continental United

7    States?

8          MS. ELBERT:  Yes, your Honor.  And other sort

9    of conditions were that the defendant is to have no

10   contact with investors in the funds offered by GPB

11   Capital, his firm, or other potential witnesses relating

12   to the criminal prosecution and the facts underlying the

13   case and no contact with his co-defendants outside the

14   presence of counsel.

15         THE COURT:  And what about travel documents?

16   It says in the pretrial report that he needs to surrender

17   all travel documents.

18         MS. ELBERT:  Yes, I guess I'd ask defense

19   counsel whether they know whether he surrendered them in

20   Massachusetts?  If not, he should surrender them here.

21         MR. MENCHEL:  He didn't have the passport with

22   him in Massachusetts.  We now have possession of the

23   passport and are prepared to turn it in.

24         THE COURT:  So Mr. Gentile, you will be given a

25   receipt by pretrial services for your passport and you

9

Proceedings

1  are not to apply for any further travel documents until

2  this case is concluded.

3          You also have to report to pretrial services as

4  directed.  You will be subject to random home visits and

5  employment visits.  You cannot possess any firearm,

6  destructive device or other weapon, and you must remove

7  or transfer all firearms from your residence within 72

8  hours and provide written verification to pretrial.

9          Are there weapons in your residence, Mr.

10 Gentile?

11         THE DEFENDANT:  No.

12         THE COURT:  Okay.

13         MR. MENCHEL:  Your Honor, we have already

14 transferred those firearms.

15         THE COURT:  So that was done up in

16 Massachusetts?

17         MR. MENCHEL:  Well, it was ordered in

18 Massachusetts.  The guns were in -- mostly in Florida and

19 I think one in New York.

20         THE COURT:  But that's already been taken care

21 of?

22         MR. MENCHEL:  Yes, your Honor.

23         THE COURT:  Thank you.

24         So I am going to ask Mrs. Gentile to unmute her

25 microphone and I will need to ask my deputy to swear her

10

                    Proceedings

1    to the truth of her testimony.  Thank you.

2              MS. GENTILE:  I'm on, your Honor.

3              THE CLERK:  Okay.  Joanne, I want to make sure

4    I have the correct spelling, it's J-O-A-N-N-E --

5              MS. GENTILE:  Correct.

6              THE CLERK:  -- is the first name?  Okay, great.

7              MS. GENTILE:  Correct.

8              THE CLERK:  Okay.  I need to swear you on the

9    record.  So please raise your right hand.

10   J O A N N E   G E N T I L E ,

11       having been first duly sworn, was examined and

12       testified as follows:

13             THE CLERK:  And just state your name once

14   (audio interference).

15             MS. GENTILE:  Joanne Gentile.

16             THE CLERK:  Thank you.

17             THE COURT:  Mrs. Gentile, as I said, I am sorry

18   for the circumstances that bring you before the Court

19   today.  You are being asked to co-sign this bond which is

20   a half-a-million dollar promise that your husband, Mr.

21   Gentile, will appear whenever he is directed to appear

22   before the Court.

23             He has been indicted on a five-count federal

24   court indictment which also includes forfeiture

25   provisions and as part of the bond, there will be

11

Proceedings

1  conditions that he has to report to pretrial services.

2  Pretrial services is not law enforcement.  They're an arm

3  of the court.  They are there to make sure that Mr.

4  Gentile is living up to his obligations to the court.

5       His travel is restricted.  He must avoid any

6  contact with any person who may be a victim or a

7  potential witness in the investigation or prosecution.

8  So that's anybody who was an investor.  How did you say

9  it, Ms. Elbert, because is GPB Capital still an ongoing

10  enterprise?

11       MS. ELBERT:  It is, your Honor.  The GPB

12  Capital is the management company for a series of funds

13  that, in turn, various investors invested money in.  I'm

14  sure Mr. Gentile is aware of the funds in question and so

15  a restriction would be contact in any of the -- contact

16  with any of investors in any of the funds offered by GPB

17  Capital.

18       THE COURT:  And --

19       MR. MENCHEL:  Your Honor, I'm sorry, may I be

20  heard on that just for a moment?

21       THE COURT:  Yes, Mr. Menchel.

22       MR. MENCHEL:  So we had conferred with the

23  government about the actual meaning of this provision and

24  it was our understanding that a number of these folks,

25  you should understand, are close, personal friends and

Proceedings

1    also work with Mr. Gentile, we presume.

2            So we had conferred with the government and

3    they were in agreement with us that there could be

4    contact with those people and discussions with them, so

5    long as they never discuss the facts of the case which

6    involve events that took place from 2015 to 2018.

7            And as I said, the government was in agreement

8    that that was okay.  I want to make sure the Court is

9    okay with that, as well.

10            THE COURT:  This is -- Ms. Elbert, is that

11    correct?

12            MS. ELBERT:  Yes, and that was unclear in my

13    prior recitation of the condition, that's the

14    (indiscernible) no discussions involving the facts of the

15    case or the criminal prosecution.

16            THE COURT:  Ms. Elbert again, something that is

17    vague is not as good as something that's specific.  I

18    wouldn't want him to come back before the Court on a

19    violation when he didn't know he was violating it because

20    the terms were vague.

21            What Mr. Menchel said was something different

22    than what you just said.  Mr. Menchel said that the

23    allegations in the indictment are from 2015 to 2018.

24    You're saying that he shouldn't talk to anybody about

25    anything that's part of this investigation.  They don't

13

Proceedings

1  know everything about the investigation yet.  Is there a

2  temporal limit on the charges?  What is that should be

3  part of this bond because again, Mrs. Gentile and Mr.

4  Gentile need to know exactly what conduct is prescribed

5  and what is permitted.

6          MS. ELBERT:  Sure, your Honor.  I believe the

7  way we left is the circumstances giving rise to the

8  indictment.  So I mean, if you would like to attach to

9  the indictment to the bond for the temporal limitation,

10  I'm not sure what would be appropriate but I think the

11  agreement is that he shouldn't be speaking to them about

12  the facts of the case as set forth in the charging

13  document.

14          THE COURT:  But Mr. Menchel is raising that he

15  works or he's close friends with a number of these

16  people.  So I thought that it was going to be certain of

17  these funds were the suspect funds and those were the

18  people that he should not talk to at all.  You're not

19  saying that, Ms. Elbert?

20          MS. ELBERT:  No, it's not certain of the funds,

21  it's any of the funds offered by GPB Capital.  Mr.

22  Gentile had stepped down as the chief executive officer

23  of GPB Capital.  I don't know to what extent he's still

24  going to work but I have a difficulty imagining why he

25  would need to speak to investors about the facts of the

14

Proceedings

1   case.  I'm not sure how much more specifically to define

2   it other than the facts of the case --

3           THE COURT:  Well again --

4           MS. ELBERT:  -- understood that he --

5           THE COURT:  -- you're saying that he cannot

6   speak to Schneider or Lash without counsel; is that

7   correct?

8           MS. ELBERT:  That's correct.

9           THE COURT:  And as far as the other people who

10  maybe investor or may be victims or witnesses, you're

11  saying that he should not speak about anything that is

12  part of this prosecution.

13          MS. ELBERT:  Correct.

14          THE COURT:  Is that correct?

15          MS. ELBERT:  Correct.

16          THE COURT:  And you know, Ms. Elbert, that

17  under other circumstances, I always advise the defendant

18  that they are under a microscope and the government will

19  be in all likelihood, watching who they're meeting with

20  and who they're speaking with and so I generally say to

21  people if somebody shows up at your door, don't answer

22  and if somebody calls you on the phone, don't speak to

23  them.

24          And again, I think you're leaving it -- I don't

25  know who these people are but Mr. Menchel, are you fine

15

Proceedings

1    with the definition that's been put on the record?

2        MR. MENCHEL:  Your Honor, we are aware and

3    understand the nature of the allegations, I think with

4    sufficient clarity, that Mr. Gentile understands what

5    those parameters are.  It really wouldn't -- we would

6    steer well clear of any issues related to the case, but

7    there are things that need to discuss with some of these

8    folks that have nothing to do with the allegations.  I

9    think he's aware of it and we're aware of it, so we're

10   comfortable.

11       THE COURT:  Okay.  But Mrs. Gentile is signing

12   onto a half-a-million dollar bond as well, so I don't

13   want her to be put into a situation where she doesn't

14   know as much about the case as Mr. Gentile and she is

15   signing on this bond as well.

16       So it's not certain people, it's -- he knows

17   what the parameters and we're going to leave it at that,

18   Mr. Menchel?

19       MR. MENCHEL:  Well, I thought the original

20   order required a list to be turned over as well by the

21   government.  We haven't received that yet but once we get

22   the list, that in combination with the ruling, I think

23   should be sufficient.

24       THE COURT:  I'm sorry, Mr. Menchel, are you

25   talking about an order that was entered in the District

16

Proceedings

1    of Massachusetts?

2         MR. MENCHEL:  Yes, and I thought there was an

3    agreement that that order would carry over to today.

4         THE COURT:  And agreement between who?  If I'm

5    not aware of it, then it's not part of my order.

6         MR. MENCHEL:  Okay.  I'm not being clear, your

7    Honor, I'm sorry.  In the original order regarding the

8    prohibition of contact with victims or witnesses, there

9    was a provision requiring that the government would

10   provide a list of who those people are and today what we

11   discussed was that we were in agreement that the

12   conditions that were imposed in Boston would apply here

13   with equal force.  I'm sorry if that wasn't clear.

14        THE COURT:  Ms. Elbert, is that correct?

15        MS. ELBERT:  Your Honor, this is the first I'm

16   hearing about the list being ordered as well.  That's

17   something that we can supply.  You know, we have lists of

18   all the investors in the funds.  I'm sure Mr. Gentile has

19   them, as well but if they need us to supply that list,

20   we're happy to do so.

21        THE COURT:  So Mr. Gentile, just so you don't

22   think that this is unusual, you were arrested in another

23   district and you were removed here but granted bail

24   there.  This is a case in this district.  The prosecutors

25   in this district are the ones who set the terms and there

17

Proceedings

1   should be an agreement between the prosecutors in this

2   district and your counsel, not whoever was initially

3   setting bail in another district.

4           So again, Mr. Mitchell, perhaps there was some

5   misunderstanding but if you're appearing in the Eastern

6   District of New York on an indictment at the Eastern

7   District of New York, it would be fairly kind to the

8   presiding judge to give what your understanding is of

9   what the bail that should be approved -- all I have is

10  the pretrial services report.  I don't have anything from

11  you, Mr. Menchel.  I don't have anything form Ms. Elbert.

12  So I am coming into this with the indictment in hand, and

13  a pretrial services report.  That's all I have.

14          MR. MENCHEL:  Okay, your Honor, I understand.

15  I would've assumed that I was wrong obviously, that the

16  order that was imposed in Boston was presented to you.

17  So I apologize for that.

18          THE COURT:  So again, is this something that's

19  going to be part of this bond, Ms. Elbert, or this will

20  be something that you could deal with Mr. Menchel about

21  because I want the bond to reflect exactly what the terms

22  of his release are from this court and I want to make

23  sure that Mrs. Gentile understands what she's signing

24  onto.  That's the purpose --

25          MS. ELBERT:  Yes.

18

Proceedings

1          THE COURT:  -- of my getting clarification on

2    these points today.

3          MS. ELBERT:  Yes, I understand, your Honor and

4    I think as I understood the agreement coming into today

5    it was that Mr. Gentile was not to have contacts with any

6    investors in the GPB funds about the facts of the case.

7          I think that Mr. Gentile is well aware of who

8    was invested in his funds.  I'm happy to file a list if

9    that is necessary but I think that the parties are on the

10   same page about what that would mean, that's a condition

11   that I know we've had imposed successfully in other cases

12   and I think it should be easy to comply with here.

13          THE COURT:  Ms. Elbert, did you know about any

14   agreement from the Boston proceeding to supply a list of

15   names?

16          MS. ELBERT:  I did not, your Honor, and I

17   apologize for that, but that wasn't communicated to me

18   but if that's something that defense counsel feels they

19   need, we can supply a list.

20          MR. MENCHEL:  Your Honor, I apologize, it was

21   in the order itself and I thought the AUSA had seen it.

22   So I apologize.

23          THE COURT:  Well again --

24          MR. MENCHEL:  That was just a lack of

25   communications.

19

Proceedings

1      THE COURT:  -- I don't mean to belabor this

2  issue.  There's an agreement to release Mr. Gentile.  I'm

3  sure that he will tell you to cooperate with Ms. Elbert

4  and if there's any need for clarification like supplying

5  lists, you'll work that out.

6          As far as I'm concerned, I think Mr. Gentile

7  wants to make sure that he knows what he has to do, and

8  the number one thing you must do, Mr. Gentile, is you

9  must come back to court whenever you are directed to do

10  so, cooperate with pretrial services regarding all of

11  these, whether it's random visits to your home, or it's

12  them telling you to call, or come in person.  You must

13  comply with whatever pretrial requires of you and I am

14  glad that the firearm issue is already dealt with and I

15  will say that the travel documents will be surrendered by

16  today, Mr. Menchel, is that possible or when do you need

17  to surrender the passport by?

18      MR. MENCHEL:  Could we do it tomorrow, your

19  Honor, just so we can make sure we have a courier to send

20  it?

21      THE COURT:  That's fine.

22      MR. MENCHEL:  Thank you.

23      THE COURT:  So by 2/10, and that will be on the

24  second floor at 225 Cadman Plaza, it's the courthouse.

25      MR. MENCHEL:  Okay, yes.

20

Proceedings

1          THE COURT:  You don't need to write it down

2     now.

3          MR. MENCHEL:  Okay.

4          THE COURT:  Ms. Elbert will tell you it's

5     surrendered to pretrial services and is it Ms. Lee, are

6     you the supervisor here Ms. Lee?

7          MS. LEE:  Your Honor, it's Anna Lee from

8     pretrial services.  I will not be the supervising officer

9     because the office (audio interference) because Mr.

10    Gentile lives in Florida, so he will be supervised in

11    Florida.  However --

12         THE COURT:  Ms. Lee?

13         MS. LEE:  -- (audio interference) --

14         THE COURT:  Ms. Lee?

15         MS. LEE:  -- (audio interference) and the

16    defendant's passport will be accepted in pretrial

17    services in the Eastern District of New York.

18         THE COURT:  You were getting a lot of feedback

19    from your phone, Ms. Lee.  I don't think anybody could

20    quite understand but I will interpret.  He's going to be

21    supervised in Florida, so it's not as if there's going to

22    be an assigned supervisor here but your passport will be

23    surrendered here because this is the district where the

24    proceedings are against you.

25         So Mr. Menchel, you'll take care of that.  I

21

Proceedings

1  was just asking, Ms. Lee, and I'm sorry, there's just --

2  I think it's because there are so many call-ins on this

3  proceeding that we're getting a lot of feedback, Ms. Lee,

4  but if I misunderstood anything, if you can either send

5  me an email, I'm just saying that he will submit his

6  passport.  You're probably going to have a courier down

7  and it will be to the second floor.  Should it say

8  "Attention:  Anna Lee" on it just to make sure it gets to

9  you?

10        MS. LEE:  Your Honor, it's Anna Lee from

11  pretrial.  I'm sorry for the feedback.  I hope this works

12  better.  That's fine, you can address it to Anna Lee and

13  then I'll take care of it.

14        THE COURT:  Very good.  I just want to make

15  sure that it does not get lost and since it's not going

16  to be Mr. Menchel handing it to somebody in the

17  courtroom, I want to make sure that it is directed to the

18  proper person.

19        Okay.  So Ms. Gentile, you've heard what the

20  conditions are of the bond and the one thing I want to

21  explain to you is that you're being asked to sign the

22  document both because the hope is you have moral

23  influence over your husband but also because you own the

24  property that's being posted in Manhasset, New York.

25        So let me ask you a couple of questions, Ms.

22

Proceedings

1  Gentile.  How long have you been married?

2          MS. GENTILE:  We've been married 22 years.  It

3  will be 22 -- yes, 22 years.

4          THE COURT:  And do you have children together?

5          MS. GENTILE:  Yes, we do.  We have four

6  children.

7          THE COURT:  And are any of them still in the

8  home?

9          MS. GENTILE:  They -- they all live with us

10  still but they're away at school.

11          THE COURT:  So what's the age range, Ms.

12  Gentile?

13          MS. GENTILE:  15 to 21.

14          THE COURT:  And is Manhasset the home that the

15  children have lived in with you?

16          MS. GENTILE:  Yes.  They've also lived with us

17  in Florida.

18          THE COURT:  So you understand that if for any

19  reason Mr. Gentile doesn't live up to his obligations of

20  the Court, in addition to ruining his own life, the

21  government will have the paperwork -- Mr. Menchel is

22  going to have the papers filed in Nassau County because

23  that's where the home is located and it's called a

24  "Confession of Judgment".

25          So this is a $500,000 bond, the house is worth

23

Proceedings

1   more than $500,000 but they can go after you and Mr.

2   Gentile in any order, in any combination to get the full

3   amount of the bond if for any reason Mr. Gentile does not

4   live up to his obligations to come back to court when

5   he's directed to do so.  Do you understand that?

6          MS. GENTILE:  I do, your Honor.

7          THE COURT:  And the forfeiture allegations, Ms.

8   Elbert, do you not say anything specific property.  So

9   the Manhasset property is free to post as part of this

10  bail package, I assume?

11         MS. ELBERT:  Yes, your Honor.

12         MS. GENTILE:  Yes.

13         THE COURT:  So Mrs. Gentile, you are not

14  physically before the Court but do you authorize the

15  Court to sign your name to this bond for your husband?

16         MS. GENTILE:  I do.

17         THE COURT:  Very good.  Then I will sign your

18  name to the bond.

19         Mr. Gentile, your attorneys will take care of a

20  good part of this but you've heard what all the

21  conditions are and that's on you, and you will be

22  supervised down in Florida, they've made arrangements for

23  that but I am required to give you the following bail

24  warnings.

25         If for any reason you don't come back to court

Proceedings

1    when you're directed to do so, agents will be dispatched,

2    they will locate you.  You'll be brought back to court

3    and the likelihood is you will not be released again

4    pending your trial on those charges.

5             In addition, there is a separate federal crime

6    called bail jumping.  Bail jumping is punishable by up to

7    ten years in prison.  Even if you are never convicted of

8    the crime for which you stand accused today, you can be

9    convicted of bail jumping.

10             Last, if you commit any crime while you're

11    released on bail, they can enhance the penalties for the

12    crime you commit because you committed the crime while

13    out on bail.

14             Do you understand those bail warnings?

15             THE DEFENDANT:  I do, your Honor.

16             THE COURT:  And will you come back to court

17    whenever you are directed to do so?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  And do you understand all the other

20    conditions that have been imposed that have been set

21    forth on the record today?

22             THE DEFENDANT:  I do, your Honor.

23             THE COURT:  And because you are not physically

24    in the courthouse today, do you authorize me to sign your

25    name to this bond?

25

Proceedings

1          THE DEFENDANT:  I do, your Honor.

2          THE COURT:  Thank you.  And I likewise will

3  sign my name to this bond.

4          So was there anything else that needed to be

5  address on behalf of the United States of America with

6  respect to Mr. Gentile today?

7          MS. GENTILE:  No, your Honor.

8          THE COURT:  Was there anything else, Mr.

9  Menchel, that needed to be addressed on behalf of Mr.

10  Gentile today?

11          MR. MENCHEL:  No, your Honor.  Thank you.

12          THE COURT:  And thank you all for your patience

13  and again, I apologize for the technical difficulties.

14  This matter is adjourned.  Thank you.

15                    (Matter Concluded)

16                       -o0o-

17

18

19

20

21

22

23

24

25

26

# C   E   R   T   I   F   I   C   A   T   E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **9TH** day of **February** 2021.

*Linda Ferrara*

Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.