

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

LHE:JAM/GSM
F. #2018R01064

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 14, 2021

By ECF

The Honorable Diane Gujarati
United States District Court
Eastern District of New York
Brooklyn, New York 11201

      Re:    United States v. Gentile, et al.
                Criminal Docket No. 21-54 (DG)

Dear Judge Gujarati:

      The government respectfully submits this reply in support of its September 23, 2021 motion, ECF Docket No. 61 ("Govt. Mot."), which (1) requested that the Court enter an Order, pursuant to Rule 502(d) of the Federal Rules of Evidence, authorizing the government to produce a collection of data obtained in connection with the February 2019 judicially-authorized search of the offices of GPB Capital Management LLC ("GPB") that has been identified as potentially subject to attorney-client or attorney work product privileges (the "Potentially Privileged Materials") (see Proposed Order, ECF Docket No. 61, Exhibit A); or, in the alternative (2) requested that the Court rule that because the Potentially Privileged Materials remain segregated outside the possession of the prosecution team, they are not subject to any ongoing disclosure obligation.  Counsel to GPB and defendant Jeffrey Lash have no objections to the Proposed Order.

      On October 7, 2021, defendants Gentile and Schneider filed a letter in opposition to the government's motion, ECF Docket No. 65 ("Def. Opp."), arguing that (1) they may be able to assert privilege over certain documents contained in the Potentially Privileged Materials, and therefore the government should not disclose them to co-defendant Lash; and that (2) the government is not in possession of the Potentially Privileged Materials and has no obligation to disclose them, as their seizure from GPB is outside the scope of the relevant search warrants.

      The defendants' opposition contains numerous factual inaccuracies, and the government reiterates its request that the Court order that the Potentially Privileged Materials be

produced to the defendants per the terms in the Proposed Order.[1] The alternatives proposed by defendants Gentile and Schneider are unreasonable, risk unfairness to defendant Lash, and are predicated on speculative and unsupported claims of privilege. While courts have taken a variety of approaches when resolving conflicts between applicable privileges and the government's disclosure obligations, the Proposed Order offers the appropriate resolution when considering the specific legal and factual circumstances of the instant case.

I.  Defendants Gentile and Schneider Have Not Established Standing to Oppose the Proposed Order

Neither Gentile nor Schneider can articulate any compelling basis to support their respective claims that they are privilege holders,[2] arguing instead that the government's "refus[al] to disclose the process it used to select the Potentially Privileged Materials" prevents them from making this threshold showing. Def. Opp. at 7 ("Messrs. Gentile and Schneider are thus not in a position to carry their burden at this time."). This argument is circular and unavailing.

Regarding defendant Gentile, his generalized assertion that he "frequently used his GPB email address to consult with his own attorneys" and that he had an expectation of privacy when doing so, runs contrary to GPB's internal rules and established caselaw.[3] See e.g., Long v. Marubeni Am. Corp., No. 05–CV–639, 2006 WL 2998671, at *3 (S.D.N.Y. Oct. 19, 2006) (finding no expectation of privacy where employer's policy instructed employees they had "no right of personal privacy" and the employer reserved the right to monitor its systems);

---

[1]  Except as expressly noted herein, the government denies the various factual assertions in the defendants' opposition.

[2]  While defendants Gentile and Schneider claim otherwise in their response, GPB—undoubtedly the primary and likely only privilege holder—does not object to entry of the Proposed Order. While the defendants' opposition alleges that "there appears to be confusion about the full contours and specifics of [GPB's] position," Def. Opp. at 6, this is simply not the case: counsel for GPB has reviewed the Proposed Order and advised that it has no objection or qualification to its terms and conditions.

[3]  Defendant Gentile does not even identify these attorneys, and it is unknown whether their names and identifiers were included in the list of over 100 attorneys and consultants provided by GPB's counsel after the court-authorized searches of GPB's offices and servers. Notably, then-counsel for GPB, Herrick Feinstein LLP, repeatedly stressed that they only represented GPB and did not represent defendant Gentile in his personal capacity. Indeed, the government did not become aware of any attorney who represented defendant Gentile in his individual capacity until months after the search, specifically on or about June 27, 2019, when attorneys for Herrick Feinstein LLP alerted the SEC that defendant Gentile had retained William McGovern, Esq. The government learned that defendant Schneider had retained individual counsel on January 2, 2020, again through communications with the SEC. Neither Gentile nor Schneider ever sought to supplement the list GPB provided with names of any individual counsel.

United States v. Finazzo, No. 10-CR-457 (RRM), 2013 WL 619572, at *11 (E.D.N.Y. Feb. 19, 2013) (holding that attorney-client privilege was waived where employee communicated on company email with attorney); In re Rsrv. Fund Sec. & Derivative Litig., 275 F.R.D. 154, 164 (S.D.N.Y. 2011) (holding that marital privilege was waived where employee communicated on company email with wife); Rissetto v. Clinton Essex Warren Washington Bd. of Cooperative Educ. Servs., No. 15-CV-720 (CFH), 2018 WL 3579862, at *6 (N.D.N.Y. July 25, 2018) (collecting cases and noting "[i]ndeed, it appears that the majority of courts have accorded great weight to the existence of an employer's computer usage policy, regardless of whether the employer engages in actual monitoring," and holding no reasonable expectation of privacy even without evidence of monitoring).[4]

The fact that defendant Gentile was both an employee and owner of GPB does not alter this analysis, see Govt. Mot. at 7 (collecting cases), and the cases cited by the defendants on this point are inapposite. Specifically, the defendant cites United States v. Chuang, 897 F.2d 646, 649 (2d Cir. 1990) for the recognized proposition that a "corporate officer…*may* have standing with respect to searches of corporate premises and records." (emphasis added). Def. Opp. at 8. However, Chuang is not instructive here, as it dealt with the search of a physical area, rather than the use of a company email system that, through its terms of use, afforded no expectation of privacy to its users. So too with United States v. Schwimmer, 692 F. Supp. 119, 125 (E.D.N.Y. 1988), where the Court's concession of a privacy interest in the search of a physical location—not the use of a company email platform—was done arguendo in order to decide a suppression motion without the need for a hearing. Id. at 125 ("In order to dispose of this motion without an evidentiary hearing, I will assume that [defendant] has shown a privacy interest in the searched premises and seized property."). The Court need make no such concession here, particularly where defendant Gentile has not alleged any facts showing that he took "steps to ensure that [the privilege] was not waived" through some "affirmative action to preserve confidentiality." United States v. Mejia, 655 F.3d 126, 132-34 (2d Cir. 2011) ("it is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence"); United States v. Hatfield, No. 06–CR–550, 2009 WL 3806300, at *3 (E.D.N.Y. Nov. 13, 2009) (identifying as the "majority view" that since "maintaining confidentiality is an element of the privilege itself," the burden is on the party seeking to assert it); In re Asia Global Crossing, Ltd., 322 B.R. 247, 255 (S.D.N.Y. 2005) ("The person asserting the privilege has the burden of proving . . . that the privilege was not waived."); Denney v. Jenkins & Gilchrist, 362 F.Supp.2d 407, 412 (S.D.N.Y. 2004) (finding that it is the burden of party seeking to avoid waiver to demonstrate "that its privilege was not waived through disclosure"). Thus, Gentile cannot assert privilege over his email communications by virtue of his ownership of GPB.

---

[4] Courts in the Second Circuit typically analyze "four advisory factors" outlined in United States v. Hatfield, No. 06-CR-0550 (JS), 2009 WL 3806300, at *8 (E.D.N.Y. Nov. 13, 2009) to evaluate whether an employee has a reasonable expectation in information stored on an employer's computer may still be a confidential communication for purposes of the attorney-client privilege. See Finazzo, 2013 WL 619572, at *7, aff'd by United States v. Finazzo, 682 F. App'x 6, 15-16 (2d Cir. 2017). Defendant Gentile has not made the requisite factual showing to allow for this "highly fact-dependent analysis." Id.

Regarding defendant Schneider, his claim of some potential privilege based on a "common legal interest" with GPB is even more tenuous.[5] The Second Circuit follows a strict interpretation of the common interest rule, under which "[o]nly those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected." Schwimmer, 892 F.2d at 243; see United States v. Weissman, No. 94-CR-760 (CSH), 1996 WL 737042, at *9 (S.D.N.Y. 1996) (the Second Circuit "is unwilling to infer a joint defense agreement from the simple circumstance of a general purpose meeting held to discuss matters of common interest"), aff'd, 195 F.3d 96, 99-100 (2d Cir.1999).  Here, the sole factual basis for the claim of joint defense protection consists of two paragraphs in the defendants' opposition, which generally allege that "[b]eginning as early as March 2018, Messrs. Gentile and Schneider were coordinating with GPB in furtherance of their common legal interests in responding to the Government's own investigation, state regulatory investigations, and private lawsuits." Def. Opp. at 9.  This extremely limited showing, even if accurate, is insufficient to meet the "high standard set by the Second Circuit for establishing that any communications" arguably included in the Potentially Privileged Materials were "both made in the course of, and in furtherance of, an ongoing joint defense effort." United States v. Agnello, 135 F.Supp.2d 380 (E.D.N.Y. March 27, 2001); Chevron Corp. v. Donziger, 296 F.R.D. 168, 203 (S.D.N.Y. October 10, 2013) ("[t]he common interest rule, like all privileges, is narrowly construed and subject to many exceptions.  The burden of establishing that it applies, in all its elements, always rests upon the person asserting it.  This showing must be made on a document-by-document basis, and based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence" (internal quotations omitted)).

In sum, neither defendant has standing to object to the Proposed Order, as neither has articulated a colorable claim of privilege over the Potentially Privileged Materials.  Even if this were not the case, the Proposed Order preserves any and all privilege claims that Gentile, Schneider, GPB or any other party could later assert.

II.     The Proposed Order Best Balances the Competing Interests, and the Defendants' Suggested Alternatives are Unsuitable

Even assuming arguendo that defendants Gentile and Schneider have standing to object to the Proposed Order, their suggested alternatives are neither practical nor sufficient to protect the rights of defendant Lash, who has requested production of the Potentially Privileged Materials.

---

[5] Generally, the joint defense privilege, or common interest rule, is an extension of the attorney-client privilege which "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989).  The joint defense privilege "is not an independent basis for privilege but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 213 B.R. 433, 435 (S.D.N.Y. 1997).

Specifically, defendants Gentile and Schneider request that the Court order the government's Filter Team—comprised of prosecutors who have no responsibility for prosecuting this matter—to prepare and produce a privilege log of each and every document in the Potentially Privileged Materials.[6] As described in the government's motion, this process would be unduly burdensome; would be unlikely to identify Brady material and thus risk injustice, primarily to defendant Lash; and would considerably delay the resolution of the criminal case. Govt. Mot. at 8.

The Proposed Order represents the best possible compromise. The defendants—particularly defendant Lash, who has requested access to the Potentially Privileged Materials—should have the ability to identify material of potential usefulness themselves, particularly in a case such as this where a complicated, long-running securities fraud scheme is alleged. This approach in no way shirks the government's responsibility, but rather recognizes the reality that neither the Filter Team nor the Court can ultimately be a substitute for each defendant's review of the Potentially Privileged Information for material helpful to their individual defense strategy. Nor does it compromise any possible privilege over any document produced—the Proposed Order explicitly recognizes that no party waives any applicable privilege over any document due to its production. See Proposed Order ¶ 4.

In sum, while the government's motion outlines the competing precedent on this issue, when considering Second Circuit law and the particular facts and circumstances of the instant case, the statutorily derived privilege concerns expressed by defendants Gentile and Schneider must yield to the government's Constitutionally required disclosure obligations. See In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007) (the Second Circuit has "construe[d] the privilege narrowly because it renders relevant information undiscoverable."). The risk to defendant Lash is particularly acute and outweighs the speculative and legally questionable privilege claims made by defendants Gentile and Schneider. Thus, by erring on the side of disclosure, the Proposed Order ensures full compliance with the government's obligations while preserving any actual or hypothetical privilege held by any party.

III.   The Decision in *United States v. Metter* is Not Instructive

The defendants' reliance on United States v. Metter, 860 F.Supp. 2d 205 (E.D.N.Y. 2012) is misplaced. In Metter, the court found a Fourth Amendment violation had occurred where, following the lawful seizure of multiple hard drives pursuant to search warrants, the government delayed its review of the imaged materials for over 15 months, and thus failed to determine what items were responsive to the search warrants and what legal privileges may attach to certain documents. Id. at 211-16. The court noted a dearth of authority permitting the government to "seize and image electronic data and then retain that data with no plans whatsoever to *begin* review of that data to determine whether any irrelevant, personal information was improperly seized . . . the government's retention of all imaged electronic documents, including personal emails, without any review whatsoever…is unreasonable and disturbing." Id. at 215 (emphasis in original). Under such circumstances, the Metter court found

---

[6] As noted in the government's motion, a privilege log is typically created by the party asserting privilege over a certain set of materials. See Govt. Mot. at 8, n. 6.

5

that the government's "intent to release indiscriminately the imaged evidence to every defendant, prior to conducting any review to determine if it contained evidence outside the scope of the warrants [and] without a predetermination of its privilege, nature or relevance to the charged criminal conduct" was improper and violative of the Constitution. Id.

The issues confronted by the court in Metter are not analogous to those raised by the instant motion and the Proposed Order. Nor is the government's conduct even remotely similar. While the defendants' opposition is littered with implicit and express accusations of government negligence and misconduct, neither has occurred. As outlined in the government's motion, per the identifiers provided by GPB counsel, the government promptly isolated the Potentially Privileged Materials from the prosecution team and has already identified to the defendants the remaining items that the government believes are responsive to the search warrants. Govt. Mot. at 2-3.

IV.   In the Absence of the Proposed Order, a Ruling Regarding the Government's Discovery Obligations is Necessary

As discussed in the government's motion, some courts that have considered the government's disclosure obligations in the context of privileged materials have concluded that evidence that is not properly "seized" by the government as responsive to a search warrant is not subject to any disclosure obligations. See United States v. Hall, No. 3:18-CR-623-S, 2020 WL 7027473, at *4-5 (N.D. Tex. Nov. 30, 2020) ("[I]f the government is not authorized to seize [certain materials], it certainly has no authority or legal obligation to disseminate it."); United States v. Fishoff, 15-CR-586 (MAS), 2016 WL 4414780, at *4 (D.N.J. Aug. 16, 2016) (finding that privileged e-mail messages "do not fall under the government's Brady obligation because the government is not in actual or constructive possession of the documents as those documents were sequestered"). Should the Court find that the Potentially Privileged Materials—which have been segregated and are inaccessible to the prosecution team—are not "in the possession of" the prosecution team, the Court's Order should reflect that discovery obligations applicable to the Potentially Privileged Material do not apply and formally direct the government to not disclose them.

* * * * *

The government respectfully requests that the Court enter the Proposed Order. In the alternative, should the Court decline to enter the Proposed Order, the government respectfully requests that the Court direct the government to not disclose the Potentially Privileged Materials.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By:    /s/
Lauren Howard Elbert
Artie McConnell
Garen S. Marshall
Assistant U.S. Attorneys
(718) 254-7577