UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                            :

UNITED STATES OF AMERICA        :
                                          :     Case No. 1:21-cr-00054 (DG)(PK)
                                          :

        v.                            :
                                          :

DAVID GENTILE,                :
JEFFRY SCHNEIDER, and     :
JEFFREY LASH,            :
                                          :

            Defendants.        :
                                          :
-------------------------------------------------------x

<br>

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS DAVID GENTILE AND JEFFRY SCHNEIDER'S MOTION**
**<u>TO COMPEL THE PRODUCTION OF BRADY, GIGLIO, AND RULE 16 MATERIALS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

I.   The Government Conducted a Joint Investigation with the SEC and Therefore Should Review
     the SEC's Full Investigative File for and Produce Any *Brady*, *Giglio*, or Other Information
     Material to the Preparation of the Defense. ............................................................................. 4

     A.   Factual Background.......................................................................................................4

     B.   Discussion ....................................................................................................................6

II.  The Government Should Produce the Full and Complete Copies of All 302s that Contain Any
     *Brady* or *Giglio* Material, Including but Not Limited to the Six Referenced in its December 7
     Letter. .................................................................................................................................. 10

     A.   Factual Background.....................................................................................................10

     B.   Discussion ..................................................................................................................12

III. The Government Should be Directed to Produce the Rule 16 Material Requested by
     Defendants Related to Communications with and Instructions Given to Confidential
     Witnesses and/or Informants.............................................................................................. 13

     A.   Factual Background.....................................................................................................13

     B.   Discussion ..................................................................................................................17

IV.  Given the Government's Production of Millions of Documents and Hundreds of Recordings
     on Defendants, the Government Should be Directed to Provide Early Disclosure of Its Exhibit
     List. ..................................................................................................................................... 19

     A.   Factual Background.....................................................................................................19

     B.   Discussion ..................................................................................................................21

CONCLUSION................................................................................................................... 24

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Brady v. Maryland*,
   373 U.S. 83 (1963) ........................................................................................................1, 6

*Giglio v. United States*,
   405 U.S. 150 (1972) .......................................................................................................1, 6

*Kastigar v. United States*,
   406 U.S. 441 (1972) .........................................................................................................13

*Kyles v. Whitley*,
   514 U.S. 419 (1995) ...........................................................................................................7

*Strickler v. Greene*,
   527 U.S. 263 (1999) ...........................................................................................................6

*United States v. Avellino*,
   136 F.3d 249 (2d Cir. 1998) ...............................................................................................7

*United States v. Blaszczak*,
   308 F. Supp. 3d 736 (S.D.N.Y. 2018) ...............................................................................7

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987) .............................................................................................23

*United States v. Cannone*,
   528 F.2d 296 (2d Cir. 1975) .............................................................................................19

*United States v. Chalmers*,
   474 F. Supp. 2d 555 (S.D.N.Y. 2007) .........................................................................22, 24

*United States v. Collins*,
   409 F. Supp. 3d 228 (S.D.N.Y. 2019) ...............................................................................8

*United States v. Connolly*,
   2017 WL 945934 (S.D.N.Y. Mar. 2, 2017) .......................................................................8

*United States v. Delia*,
   944 F.2d 1010 (2d Cir. 1991) ...........................................................................................19

*United States v. Djibo*,
   2019 WL 1517086 (E.D.N.Y. Apr. 8, 2019) .....................................................................7

*United States v. Feldman*,
   731 F.Supp. 1189 (S.D.N.Y.1990) ...................................................................................23

*United States v. Ferguson*,
   478 F. Supp. 2d 220 (D. Conn. 2007)................................................................................8

*United States v. Fletcher*,
   74 F.3d 49 (4th Cir. 1996) ...................................................................19

*United States v. Ghailani*,
   687 F. Supp. 2d 365 (S.D.N.Y. 2010) ...................................................17

*United States v. Giffen*,
   379 F. Supp. 2d 337 (S.D.N.Y. 2004) ..............................................19, 21

*United States v. Gil*,
   297 F.3d 93 (2d Cir. 2002) ..................................................................7

*United States v. Gupta*,
   848 F. Supp. 2d 491 (S.D.N.Y. 2012) ...............................................7, 8

*United States v. Martoma*,
   990 F. Supp. 2d 458 (S.D.N.Y. 2014) .............................................7, 8, 9

*United States v. McDonald*,
   2002 WL 2022215 (E.D.N.Y. Aug. 6, 2002) ........................................22

*United States v. Middendorf*,
   2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018) .......................................9

*United States v. Morell*,
   524 F.2d 550 (2d Cir. 1975) ................................................................7

*United States v. Nanfro*,
   1992 WL 309871 (S.D.N.Y. Oct. 14, 1992) ..........................................17

*United States v. Nejad*,
   487 F. Supp. 3d 206 (S.D.N.Y. 2020) ...................................................13

*United States v. Poindexter*,
   727 F. Supp. 1470 (D.D.C. 1989) .........................................................23

*United States v. Rodriguez*,
   496 F.3d 221 (2d Cir. 2007) ................................................................6

*United States v. Turkish*,
   458 F. Supp. 874 (S.D.N.Y. 1978) ..................................................21, 23

*United States v. Upton*,
   856 F. Supp. 727 (E.D.N.Y. 1994) ..............................................22, 23, 24

*United States v. Urena*,
   989 F. Supp. 2d 253 (S.D.N.Y. 2013) ...................................................17

*United States v. Vilar*,
   530 F. Supp. 2d 616 (S.D.N.Y. 2008) ..............................................21, 22

Case 1:21-cr-00054-DG-PK   Document 118   Filed 05/31/22   Page 5 of 30 PageID #: 929

Rules

Fed. R. Crim. P. 16 ......................................................................................................*passim*

iv

Defendants David Gentile and Jeffry Schneider respectfully submit this motion to compel the Government to produce material it is required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, and Federal Rule of Criminal Procedure 16.

## PRELIMINARY STATEMENT

The Government's handling of its *Brady* obligations has raised questions for Defendants since the start of this case. Although the Government has been working hand-in-glove with the SEC for nearly four years on the investigation into the events related to this case, the Government still has not conducted a review of the entirety of the SEC's relevant files. Despite its extensive coordination with SEC, the Government—which relied on the SEC for investigative documents, jointly interviewed multiple witnesses with the SEC, and credited the SEC in its press release announcing the Indictment—now claims that it has no obligation to review the SEC's materials (beyond those produced pursuant to an access request) to ensure that it has complied with its *Brady* obligations. Given the joint nature of the investigation, the Government should be required to review the entire SEC investigative file, including notes and evaluative summaries, for potentially exculpatory evidence or other material that would aid in the preparation of the defense.

Additionally, over the past year, the Government has produced millions of documents in discovery, while identifying only a handful of witness statements—a few 302s and six interview summaries—as potentially qualifying as *Brady* material. On the few occasions that the Government has produced *Brady* material, it has done so at the insistence of Defendants, despite having this information in its possession for several years. This is true even for exculpatory statements made by a defendant in this case. ██████████████████████████████████ ████████████████████████ but the Government only produced these statements to Defendants in July 2021—months after Defendants requested the production of 302s containing

1

*Brady* material. The same is true of other witness statements. Defendants effectively have been put in a situation where the Government produces *Brady* material only when pressed with specific witness names and even then, does not appear to produce the entirety of the exculpatory information those witnesses provided. This course of conduct raises the specter of a substantial risk that there is additional *Brady* information the Government has not produced (whether wittingly or unwittingly) and about which the defense has not yet been made aware.

The Government's handling of potentially privileged materials in this case is equally troubling. In addition to the issues set forth in Defendants' motion for a protective order, the Government obtained information and materials from several cooperating witnesses and/or confidential informants in this case, including hundreds of recordings (dozens of which were made in coordination with the FBI). The Chief Compliance Officer of GPB Capital Holdings LLC ("GPB") and ████████████████████████████████, were often privy to, and/or participated in, potentially privileged conversations recorded at the behest of the Government. Defendants have repeatedly asked, pursuant to Rule 16, for the instructions given and the procedures followed in connection with information obtained from cooperating witnesses and/or confidential informants so that they may assess the adequacy of the systems put in place and ensure that the applicable privileges were protected. To date, the Government has refused to provide this information.

As to Defendants' outstanding requests for *Brady* and Rule 16 materials—particularly with respect to witness statements, review of the SEC's investigative file, and information received from cooperating witnesses and/or confidential informants—the parties have exchanged multiple letters and held several meet-and-confers to try to resolve disagreements without the Court's

intervention. The Government, however, maintains that it has fully complied with its disclosure obligations and will not produce materials responsive to Defendants' outstanding requests.

In addition to these *Brady* and Rule 16 disputes, there remains the issue of largely unfiltered and voluminous discovery. To date, the Government has produced over six million documents, approximately 492,000 of which the Government obtained pursuant to search warrants. While Defendants have made concerted efforts to work with the Government to narrow the universe of documents to information material to the preparation of the defense, the Government has thus far narrowed only the set of search warrant documents from 492,000 to 2,000. The vast majority of documents produced in this case remain unfiltered. As such, Defendants now submit that early disclosure of the Government's exhibit list is warranted.

For the reasons set forth below, Defendants respectfully request that the Court issue an order compelling the Government to:

- Review the SEC's entire investigative file for *Brady*, *Giglio*, or other information material to the preparation of the defense and produce any such documents or information, including but not limited to any documents, memoranda, notes, or other summaries of interviews conducted by the Government, calls and/or meetings with potential Government witnesses or representatives for Defendants' respective entities, and/or any communications between the DOJ and the SEC related to the investigations of GPB, Gentile, Schneider, and/or Lash;

- Produce the full and complete copies of all 302s that contain any *Brady* or *Giglio* material, including but not limited to the six referenced in the Government's December 7, 2021 letter:

  o Trent Schneiter (Dec. 2, 2019);

  o Josh Teeters (Dec. 16, 2019);

  o Joe Dattolo (July 17, 2020);

  o Zach Zachry (July 20, 2020);

  o Brian Marshall (Aug. 18, 2020); and

  o Brian Weisenberger (Sept. 23, 2020);

- Produce communications between the Government and Michael Cohn, CW-1, and/or any Government witness (or any attorney or agent for such witness) referenced in the Indictment regarding the Government's investigation of GPB, Gentile, Schneider, and/or Lash, including but not limited to instructions or guidance given by the Government to these persons, any information, presentations, white papers, cover letters or other materials provided to the Government by a witness, their counsel or other agents, the Government's notes or summaries of any such communications, and/or any other materials submitted or otherwise made available to or by the Government; and

- Produce documentation of any steps the Government may have taken to avoid the gathering of and ensure the protection of potential privilege when obtaining information and/or recordings from cooperating witnesses, including but not limited to instructions or guidance given by the Government to agents, informants, and confidential witnesses;

- With respect to the various recordings produced in discovery to date, produce:

  o any evidence of the consensual nature of the recordings;

  o any information concerning whether the person(s) making the recording was directed by the Government or otherwise induced to do so in any way;

  o any instructions given to agents or informants (e.g., as to potential privilege issues);

  o any information on the treatment of such recordings; and

  o any notes or reports generated by law enforcement officers concerning chain of custody, 302s or other documents which depict the contents of the recordings, describe how the recordings relate to the investigation, or which detail the names of the law enforcement agents who listened to the recordings; and

- Disclose the list of exhibits it intends to use as part of its case-in-chief at least 60 days before trial.

## <u>ARGUMENTS</u>

I. **The Government Conducted a Joint Investigation with the SEC and Therefore Should Review the SEC's Full Investigative File for and Produce Any *Brady*, *Giglio*, or Other Information Material to the Preparation of the Defense.**

### A. Factual Background

The Indictment alleges that Gentile, Schneider, and Lash "engaged in a scheme to defraud investors and prospective investors in the GPB Funds through material misrepresentations and

omissions relating to, among other things: (a) the source of funds used to pay monthly distribution payments to investors in several of the GPB Funds, including Holdings I, Automotive Portfolio and Holdings II, and (b) the revenue generated by Holdings I in 2014 and Automotive Portfolio in 2015." ECF No. 1 ¶ 15.

The Government brought these charges against Defendants after working in tandem with the SEC from the outset of their investigation. The SEC informally initiated its inquiry into GPB in March 2018, when it sent a letter to GPB initiating an audit after a former operating partner sued by GPB counterclaimed and accused GPB of wrongdoing. Just two months after the SEC sent this letter, the Government also began investigating Gentile and GPB. Over the next few years, the Government conducted at least one dozen witness interviews (of which Defendants are aware), and many of these interviews were conducted jointly with the SEC—including the interview of Lash. In fact, in response to Defendants' request to the Government for the SEC investigative file, the Government itself replied, "agents from the FBI took notes at interviews conducted in parallel with SEC attorneys."[1] The SEC filed its complaint against Gentile, Schneider, Lash, GPB, Ascendant, and Ascendant Alternative Strategies on the same day that the Government's Indictment was unsealed—February 4, 2021—and in the Government's press release from that day, Acting U.S. Attorney Seth DuCharme thanked the SEC "for their significant cooperation and assistance during the investigation."[2]

---

[1] *See* Letter from AUSA Lauren Elbert to Sean S. Buckley (Dec. 22, 2021), attached as Ex. H. Based on this statement, Defendants understand that the Government and SEC jointly attended interviews, however, Defendants do not know the exact extent of the coordination.

[2] *See* Press Release, Department of Justice, *GPB Capital Founder and CEO Among Three Individuals Indicted in Private Equity Investment Fraud* (Feb. 4, 2021), https://www.justice.gov/usao-edny/pr/gpb-capital-founder-and-ceo-among-three-individuals-indicted-private-equity-investment.

Given the close relationship of these two agencies over the course of the investigation, it should come as no surprise that the vast majority of the documents the Government has produced to Defendants were originally produced by the SEC to the Government. GPB made 46 productions to the SEC between October 2018 and July 2020. On April 27, 2021, the Government represented to Defendants that all materials it had received from the SEC pursuant to its access request would be turned over to Defendants. Indeed, the SEC documents currently comprise approximately 6 million out of the 6.7 million documents produced to date, (and of the remaining 700,000 documents, 492,000 documents the Government obtained pursuant to search warrants—only 2,000 of which the Government subsequently has "deemed responsive to the warrant").[3] GPB also made 17 productions to the Government between June 8, 2018 and March 13, 2020.

In other words, although the Indictment was unsealed approximately one year ago, for nearly three years prior to the unsealing, and presumably to this date, the Government and SEC have been working together on the investigation of the conduct at issue in this Indictment—sharing millions of documents and jointly conducting numerous interviews.

### B. Discussion

The Government is constitutionally obligated to disclose evidence favorable to the accused when such evidence is material to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). This duty covers not only exculpatory material, but also information that could be used to impeach government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). "*Brady* and its progeny require the Government to disclose material information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching.'" *United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). The

---

[3] *See* Email from AUSA Elbert to Defendants (Aug. 27, 2021), attached as Ex. B.

Government has a constitutional obligation to disclose *Brady* material, "in time for its effective use at trial." *United States v. Gil*, 297 F.3d 93, 102, 105 (2d Cir. 2002) (reversing conviction where the Government waited to disclose in its 3500 materials *Brady* evidence that "had the potential to subvert the background assumption" on which the Government based its theory of the case); *see also United States v. Djibo*, No. 15 CR 88, 2019 WL 1517086, at *10 (E.D.N.Y. Apr. 8, 2019) (granting a new trial where the Government's late disclosure of *Brady* material "deprived [defendant] of the opportunity to mount a proper defense").

Courts in the Second Circuit have routinely held that "[w]here the [government] conducts a 'joint investigation' with another state or federal agency, . . . the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence." *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012); *see also United States v. Blaszczak*, 308 F. Supp. 3d 736, 741 (S.D.N.Y. 2018) ("[*Brady*] extends to anyone who is an 'arm of the prosecutor.'" (quoting *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975))); *United States v. Martoma*, 990 F. Supp. 2d 458, 462 (S.D.N.Y. 2014) ("[T]he Court finds that the USAO and the SEC conducted a joint investigation of the Defendant, and therefore the USAO's obligation to produce [*Brady/Giglio* material in] communications . . . extends to documents in the sole possession of the SEC."). That obligation extends to all such files, not just the ones the Government wishes to review. *See, e.g.*, *Gil*, 297 F.3d at 101 (finding, under *Brady*, the DOJ must produce any "evidence favorable to the accused when such evidence is material to guilt or punishment" that is known to the DOJ, even if in the possession of another government agency); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (finding the government "has a duty to learn of any favorable evidence known to the others acting on [its] behalf in the case" (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995))).

Assessing whether a joint investigation occurred is "a fact-specific inquiry" involving consideration of the "'degree of cooperation between agencies,' . . . such as their coordination in conducting witness interviews and otherwise investigating the facts of the case." *Martoma*, 990 F. Supp. 2d at 461 (quoting *United States v. Ferguson*, 478 F. Supp. 220, 238 (D. Conn. 2007)). In determining whether a joint investigation occurred, courts consider several factors, such as the extent to which the other agency shared documents with the government, jointly interviewed witnesses, jointly presented the case to the grand jury, and was otherwise involved in the development of prosecutorial strategy. *See United States v. Collins*, 409 F. Supp. 3d 228, 239 (S.D.N.Y. 2019). "For *Brady* purposes, it is enough that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions, because the purpose of *Brady* is to apprise the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." *Gupta*, 848 F. Supp. 2d at 494.

Here, the degree of cooperation between the Government and the SEC demonstrates that the two agencies conducted a joint investigation. Perhaps most significantly, the Government and the SEC conducted several joint interviews, including interviews of Lash, GPB employees; and several broker dealers (whose views may be relevant to the Government's burden to demonstrate materiality). The Government admits that "agents from the FBI took notes at interviews conducted in parallel with SEC attorneys." By participating in multiple interviews with the SEC, the Government engaged in the kind of shared fact-gathering that is a hallmark of joint investigations. *See Martoma*, 990 F. Supp. 2d at 461 (citing the fact of joint interviews as evidence for a joint investigation); *contra United States v. Connolly*, 2017 WL 945934, at *7 (S.D.N.Y. Mar. 2, 2017) (observing that "the Government did not conduct any joint witness interviews or coordinate depositions with the SEC" in support of its finding that there was no joint investigation).

8

The Government also relied heavily on the SEC to collect documents from GPB and other third parties, as evidenced by the fact that most of the Government's documents produced in this case came from the SEC. Indeed, the SEC documents currently comprise approximately 6 million out of the 6.7 million documents produced to date. This sharing of documents alone strongly supports the existence of a joint investigation, particularly here, where the Government effectively outsourced the document-collection process to the SEC. *See Martoma*, 990 F. Supp. 2d at 461 (citing the fact that "[t]he SEC . . . provided the USAO with documents it obtained during its investigation" as evidence of a joint investigation); *United States v. Middendorf*, 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (citing sharing of documents as a factor to consider in joint-investigation analysis). Unsurprisingly against this backdrop, in the press release announcing the Indictment, the Government acknowledged the significant contributions of the SEC in assisting with its investigation.[4]

Simply put, the Government engaged in a joint investigation with the SEC and so must fulfill its discovery obligations to search for and produce all exculpatory and impeaching materials in the SEC's files. The Government therefore should review the entire SEC investigative file, including evaluative evidence, for exculpatory, impeachment, or other evidence that may be material to the preparation of the defense.

---

[4] *See* Press Release, Department of Justice, *GPB Capital Founder and CEO Among Three Individuals Indicted in Private Equity Investment Fraud* (Feb. 4, 2021), https://www.justice.gov/usao-edny/pr/gpb-capital-founder-and-ceo-among-three-individuals-indicted-private-equity-investment.

II.   **The Government Should Produce the Full and Complete Copies of All 302s that Contain Any *Brady* or *Giglio* Material, Including but Not Limited to the Six Referenced in its December 7 Letter.**

A.  **Factual Background**

As evidenced by their numerous discovery letters to the Government and multiple meet-and-confers, Defendants have undertaken more than a reasonable effort to obtain *Brady* material ahead of bringing this issue before the Court. In February 2021, the Court issued a series of Rule 5(f) Orders directing the Government to produce material it is required to disclose under *Brady*, *Giglio*, and their progeny promptly in compliance with its existing obligations under *Brady* and its progeny. *See* ECF Nos. 14, 21; *see also* Feb. 16, 2021 Status Conference Tr., ECF No. 29, at 16:22; 17:2–16. On April 17, the Government represented to Defendants that it would disclose and/or produce *Brady* material promptly. In an effort to streamline this process, on April 21, 2021 Defendants sent the Government a letter (the "April 21 Letter") outlining specific categories of material which they requested be produced.[5] Relevant here, Defendants requested: (a) statements discoverable under *Brady* and its progeny; (b) the identities and statements of individuals who denied knowledge of any crimes allegedly committed by the charged defendants; and (c) any 302s or other reports of interviews, notes, or other record of statements made.

In response, on May 24, 2021, the Government produced the full 302s for the interviews of six individuals that occurred between October 2019 and August 2020—interviews which had occurred well before the Indictment in this case was returned but were disclosed only in response to Defendants' letters. Noticeably absent from this production were the 302s memorializing Government interviews of Lash, which had occurred on April 10 and December 18, 2019. The subsequently produced Lash 302s contained exculpatory statements, for example, evidencing that

_____

[5] *See* Letter from Sean S. Buckley to AUSA Lauren Elbert (Apr. 21, 2021), attached as Ex. A.

Lash knew he would have to pay for any shortfall under the 2014 guarantees. This information conflicts directly with certain of the Indictment's allegations regarding the legitimacy of the performance guarantees. *See* ECF No. 1 ¶ 44.

Thereafter, during a June 14, 2021 meet-and-confer, defense counsel raised concerns that there likely remained outstanding *Brady* material that had not been produced promptly pursuant to the Court's Rule 5(f) Orders. Among other things, Defendants told the Government that they were aware that Lash had made statements to the Government likely containing, if not *Brady*, information that was material to the preparation of the defense. Those statements had not been produced to counsel for Gentile or Schneider despite the fact that they had been made to the Government more than 18 months prior to the specific request for their disclosure. In response, the Government represented that: (a) it had already reviewed witness statements with the FBI; (b) it intended to do the same with the SEC; and (c) it would conduct a second read of all 302s.

On July 19, the Government made an additional production, finally producing the Lash 302s to Gentile and Schneider. The production did not address whether the Government had reviewed SEC witness statements or re-read any other 302s.

On November 17, 2021 (the "November 17 Letter"), Defendants asked for confirmation that the Government was "unaware of any other materials subject to disclosure under *Brady* and its progeny," or to produce the remaining *Brady* material in the alternative.[6] The November 17 Letter specifically identified nine individuals whom the defense believed made exculpatory statements to the Government on one or more occasions and asserted that "[a]ny written notes of those meetings in the Government's possession, custody, or control are discoverable pursuant *Brady* and its progeny to the extent that these materials contain exculpatory information." *Id.*

---

[6] *See* Letter from Sean S. Buckley to AUSA Lauren Elbert (Nov. 17, 2021), attached as Ex. F.

On December 7, 2021, the Government provided "summaries of statements made" by six individuals during Government interviews (the "December 7 Letter").[7] Three of the individuals had been identified by the defense in the November 17 Letter, and all of the summaries reflected statements made in Government interviews that occurred between December 2019 and September 2020 (i.e., approximately one to two years prior to Defendants' request). Unlike the May 24, 2021 production, the Government did not provide the underlying 302s or any notes taken during those interviews. In the Government's December 22, 2021 response (the "December 22 Letter"), it again did not indicate whether it had reviewed the SEC's investigative file for *Brady*. The Government did, however, state that it "has complied with all of its obligations under *Brady* and will continue to do so." *See* Ex. H.

On February 4, 2022, Defendants again raised what they viewed to be the outstanding discovery requests (the "February 4 Letter").[8] As the parties were unable to make progress on these remaining requests, at the February 11, 2022 status conference, Defendants informed the Court that they would be filing a motion to compel.

### B. Discussion

Even to the extent the Government has reviewed materials for *Brady*, the record demonstrates that review is deficient. Thus far, the Government appears to have produced *Brady* material only when pressed by the defense with specific witness names and even then, may not have produced all exculpatory information provided by those witnesses. That the Government's productions of *Brady* material occurred only after the defense identified the specific individuals who likely made statements discoverable under *Brady* raises serious concerns regarding

---

[7] *See* Letter from AUSA Lauren Elbert to Sean S. Buckley (Dec. 7, 2021), attached as Ex. G.

[8] *See* Letter from Sean S. Buckley to AUSA Elbert (Feb. 4, 2022), attached as Ex. I.

Government's calculus as to what constitutes exculpatory material and where it may be located. It serves further to highlight the seriousness of the problem and the Government's apparent failure to meet its affirmative obligations to identify and disclose *Brady* materials.

In light of the above issues regarding the status of the Government's *Brady* disclosures to date, Defendants move to compel the production of full and complete copies of all 302s that contain any *Brady* or *Giglio* material, including but not limited to the six referenced in the Government's December 7 Letter. *Brady* is an affirmative obligation that belongs to the Government, not Defendants. And the Government's delayed productions here—made only at Defendants' insistence—raise questions about whether this obligation has been and will continue to be satisfied. *See, e.g.*, *United States v. Nejad*, 487 F. Supp. 3d 206, 213 (S.D.N.Y. 2020) ("Setting aside whether these interview reports constitute *Brady* material, the Government's handling of them reveals failures in its treatment of potentially exculpatory material. . . . [T]he Government's failure to further pursue the question of whether the Aular 302s were required to be disclosed under *Brady* is shocking. And even if the Government had considered the *Brady* question and concluded that the Aular 302s did not constitute *Brady* material, the Court agrees that the 302s should nonetheless have been disclosed in advance of trial as a matter of good practice.").

III.   **The Government Should be Directed to Produce the Rule 16 Material Requested by Defendants Related to Communications with and Instructions Given to Confidential Witnesses and/or Informants.**

A.   **Factual Background**

The Rule 16 requests highlighted below are necessary to inform whether Defendants will file certain potential motions, including possible motions to suppress and/or potentially seek a hearing pursuant to *Kastigar v. United States*, 406 U.S. 441, 461–62 (1972), to determine whether and to what extent privileged information tainted the investigation, as is relevant to the relief sought herein. Based on the discovery produced to date, there appear to be defects in the

Government's processes and procedures used in gathering information from witnesses and/or informants regarding privilege.

The facts surrounding the wiring up of GPB's Chief Compliance Officer, Michael Cohn, illustrate Defendants' concerns. In August 2018, Gentile, as part of his effort to upgrade control functions to better manage investment adviser compliance issues, retained an executive search firm to identify candidates to serve as GPB's CCO. That effort led him to hire Michael Cohn, an SEC Division of Enforcement employee with specialized expertise in investment adviser regulation. Gentile and his senior staff worked with Cohn to ensure that he would integrate into company operations and serve as Gentile's trusted advisor on compliance issues. Cohn was given a wide scope of responsibility, including an initial assignment to revise and upgrade GPB's compliance manual to ensure that it was consistent with Commission requirements. He was also invited into attorney-client discussions with GPB counsel about financial reporting, disclosure obligations, and responses and defenses to the SEC's investigation.

Several months later, on February 26, 2019, unbeknownst to Gentile and GPB, federal prosecutors indicted Cohn under seal, alleging that Cohn stole information about the SEC's investigation of GPB from a Division of Enforcement database with intent to share it with senior managers at GPB. Federal prosecutors then obtained and executed a warrant to search GPB's offices, based potentially, in part, on information provided by Cohn.[9] Following the execution of the search warrant, the prosecutors permitted Cohn, while under a sealed indictment for serious federal crimes and cooperating with the Government, to return to his role as GPB's CCO while

---

[9] The application for the warrant to search GPB's offices references information received from certain "high-ranking," unidentified employees. Defendants do not know for certain whether Cohn was one of these unidentified individuals.

the Company was in the midst of the SEC and DOJ's joint investigation and actively engaged with responding to questions and document requests from those authorities.[10]

During this time, Cohn secretly recorded a number of conversations with Gentile and others at the direction of the FBI. Gentile, unaware of this, continued to interact daily with Cohn, seeking his advice on compliance matters, including those related to some of the allegations that the DOJ is now making against Gentile. As CCO of GPB, Cohn was privy to sensitive and potentially privileged information, including information that Gentile received during privileged conversations with counsel. Several examples of Gentile relaying potentially privileged information to Cohn are provided below. *See infra*.

In light of these events, Defendants have expressed serious concerns with the Government's instructions to its informants and, specifically, with the Government's treatment of potentially privileged information. In their April 21, November 17, and February 4 Letters, Defendants requested information regarding the Government's treatment of and instructions given to these witnesses and informants, along with any steps taken by the Government properly to protect against intrusion into any applicable privilege held by any of Defendants. The Government responded in its December 22 Letter stating that the Government took "appropriate steps to prevent cooperating witnesses from obtaining or disclosing attorney-client or other potentially privileged materials," *see* Ex. H, but failed to provide any facts about the "appropriate steps" taken. But Defendants are entitled to this information.

Defendants identify below a number of illustrative instances in the recordings that appear to capture the sharing of information that is potentially protected by the attorney-client privilege:

---

[10] Indeed, in mid to late-2018 (around the time Cohn was hired), the SEC and DOJ sent numerous subpoenas to GPB and its employees. GPB made dozens of productions to the SEC between October 2018 and July 2020.

- **DOJ-EDNY-0572730** (████████ recording made in coordination with FBI): On October 5, 2018, Gentile discussed legal advice about law enforcement investigations provided by his lawyers with ████████████████████████████████████████████████████████████[11]

- **DOJ-EDNY-0572121** (Cohn recording made in coordination with FBI): On March 11, 2019, Gentile discussed with Cohn (GPB's COO) legal advice about SEC auditing procedures, which was provided by Howard Elisofon, an attorney at Herrick Feinstein.

- **DOJ-EDNY-0572123** (Cohn recording made in coordination with FBI): On March 20, 2019, Gentile discussed with Cohn legal strategy and advice about law enforcement investigations provided by Elisofon.

These examples alone establish that there remain substantial questions regarding the measures implemented by the Government to protect against the improper recording and disclosure of potentially privileged information. What is more, it appears that the Government knowingly used an attorney to record conversations with Gentile and others. *See, e.g.*, SA-DOJ-PRIME 00001289 (recording made by ████████████, General Counsel of ████████████, a portfolio company of GPB). This is a recording that the Government has indicated it plans to use at trial. *See* Ex. H.

Relatedly, Defendants have also requested communications between the Government and cooperating witnesses and/or confidential informants—including requests for information, presentations, white papers, cover letters, or other materials provided to the Government by such witnesses. *See* Exs. A, E. In response, the Government maintained in their December 22 Letter that these requests sought information "not discoverable under the Rules or any law of which the government is aware." *See* Ex. H. As discussed below, Defendants respectfully disagree.

---

[11] Defendants redact the names of certain individuals referenced in the recordings because these names were provided by the Government pursuant to the terms of the Protective Order previously entered in this case. *See* ECF 33. On the same basis, Defendants similarly redact the names of certain individuals who provided witness statements in this case.

**B.  Discussion**

Rule 16 of the Federal Rules of Criminal Procedure provides for a series of mandatory discovery and inspection obligations with which the Government must comply in criminal cases upon request of a defendant. *See* Fed. R. Crim. P. 16(a)(1)(A) to (G). Where the government fails to comply with its Rule 16 discovery obligations, a district court can compel compliance prior to trial. *See United States v. Nanfro*, 1992 WL 309871, *8-11 (S.D.N.Y. Oct. 14, 1992) (granting defendants' motions to compel discovery pursuant to Rule 16).

Pursuant to Rule 16(a)(1)(E)(i), the Government must disclose, upon request, items in the Government's possession that are "material to preparing the defense." Rule 16 imparts broader pretrial demands on the Government than does *Brady*. *See, e.g.*, *United States v. Ghailani*, 687 F. Supp. 2d 365, 371 n.25 (S.D.N.Y. 2010) ("Whereas *Brady* is grounded in due process rights and seeks to ensure fair trials by preventing the suppression of exculpatory evidence, Rule 16 is a general criminal discovery mandate approved by Congress in the interests of promoting broader pre-trial discovery for both defendants and the government."). The "materiality standard of Rule 16 normally is not a heavy burden" and asks only whether the evidence "'could be used to counter the government's case or to bolster a defense.'" *United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013) (internal quotations omitted).

Here, Defendants move to compel the production of communications between the Government and Cohn, CW-1, and/or any Government witness (or any attorney or agent for such witness) referenced in the Indictment, regarding the Government's investigation of GPB, Gentile, Schneider, and/or Lash, including but not limited to instructions or guidance given by the Government to these persons, any information, presentations, white papers, cover letters, or other materials provided to the Government by a witness, their counsel or other agents, the Government's notes or summaries of any such communications, and/or any other materials

submitted or otherwise made available to or by the Government. This material must be disclosed to the extent it includes any exculpatory information, the disclosure of which is required by *Brady* and its progeny, or any information material to the preparation of the defense, as required by Rule 16.

Furthermore, as set forth above, the Government knowingly used an attorney to record conversations with Gentile and others. The Government also recorded conversations in which potentially privileged information was shared. The information requested by Defendants regarding the Government's treatment of and instructions given to these witnesses and informants, along with any steps taken by the Government to properly protect against intrusion into any applicable privilege held by any of Defendants, is discoverable under Rule 16 and pursuant to Gentile ad Schneider's rights to effective representation by counsel and a fair trial, as this information may properly inform potential pretrial motions.

While the Government maintains that it took "appropriate steps to prevent cooperating witnesses from obtaining or disclosing attorney-client or other potentially privileged materials," *see* Ex. H, the Government's productions to date raise substantial questions as to the adequacy of those steps, such as the improper recording and disclosure of potentially privileged information. Defendants thus seek the production of documentation on any steps the Government may have taken to avoid the interception of and to ensure the protection of potential privilege when obtaining information and/or recordings from cooperating witnesses, including but not limited to instructions or guidance given by the Government to agents, informants, and confidential witnesses.

Finally, as part of Defendants' assessment of the propriety of the recordings produced in discovery to date, Defendants move to compel the production of:

- any evidence of the consensual nature of the recordings;

- any information concerning whether the person(s) making the recording was directed by the Government or otherwise induced to do so in any way;

- any instructions given to agents or informants (e.g., as to potential privilege issues);

- any information on the treatment of such recordings; and

- any notes or reports[12] generated by law enforcement officers concerning chain of custody, 302s or other documents which depict the contents of the recordings, describe how the recordings relate to the investigation, or which detail the names of the law enforcement agents who listened to the recordings.

## IV. Given the Government's Production of Millions of Documents and Hundreds of Recordings on Defendants, the Government Should be Directed to Provide Early Disclosure of Its Exhibit List.

### A. Factual Background

The Government has generally made a minimal effort to narrow the scope of documents at issue in this case. The Government, by its own admission, has not conducted a Rule 16 review of material in its possession. Instead of undertaking a serious and detailed review and limiting its production to the categories listed in Rule 16 in the over two years the Government has had some of this material, including items the Government intends to use in its case-in-chief, the Government dumped over 6.7 million documents on Defendants. Specifically, the Government produced, with

---

[12] Defendants acknowledge that Rule 16(a)(2) explicitly exempts internal government reports from discovery. Defendants are not seeking all reports created in the case but rather ask that the Court compel the production of a limited subset of materials that, given the unique circumstances present, should be granted pursuant to the Court's inherent authority to oversee discovery. Under Rule 16, this Court has broad authority to regulate discovery beyond the authority expressly provided by other Rules. *See* Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause . . . grant other appropriate [discovery] relief."); *United States v. Fletcher*, 74 F.3d 49, 54 (4th Cir. 1996) ("Pursuant to Rule 16, the court has authority to regulate discovery, which includes the power to make such . . . order as is appropriate."); *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991) (same). That is, Rule 16 is "intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." Fed. R. Crim. P. 16 advisory committee's note to 1974 amendment. Indeed, the Second Circuit has recognized that a district court has "inherent authority to regulate the nature and timing of discovery." *See United States v. Giffen*, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004) (citing *United States v. Cannone*, 528 F.2d 296, 298 (2d Cir. 1975)).

limited exception, all of the material that it amassed by physical and electronic searches and seizures executed on numerous premises, including hundreds of hours of recordings made by Government informants and other witnesses pursuant to purported consent and/or consensual wiretaps; copious records produced by third parties pursuant to subpoenas; and millions of documents obtained from the SEC and other state regulatory and enforcement agencies; as well as various other materials obtained from other sources and means.

Of course, the amount of discovery that Government will use for its case-in-chief at trial could not physically amount to more than a mere fraction of this voluminous information dump. Recognizing this, Gentile and Schneider have each asked the Government to identify relevant subsets of these documents to avoid having to litigate documents and issues that would waste the Court's and Defendants' time and resources on motions pertaining to evidence that the Government has no intention of using at trial.[13] The Government has done so to some extent (paring down the search warrant documents, as discussed below), but maintains that it "has complied and will continue to comply with all of its discovery obligations."[14]

In light of these issues, Defendants filed a now-withdrawn Rule 12(b)(4)(B) motion, which was fully briefed on October 28, 2021. Having since narrowed the scope of the remaining discovery disputes bearing on the motion, Defendants withdrew their then-pending motion at the February 11, 2022 status conference to seek the limited relief from the Court through the instant motion instead.

---

[13] *See* Letter from Sean S. Buckley to AUSA Elbert (Sept. 3, 2021), attached as Ex. C; *see also* Letter from Glenn C. Colton to AUSA Elbert (Sept. 7, 2021), attached as Ex. D.

[14] *See* Letter from AUSA Elbert to Buckley and Colton (Sept. 8, 2021), attached as Ex. E.

To date, the Government has narrowed the scope of search warrant documents and recordings pursuant to Defendants' requests, but the vast majority of materials it produced in this case remain unfiltered. Nearly four months after finishing its productions of search warrant documents, on August 27, 2021, the Government provided Defendants with a list of 2,000 out of the 492,000 documents it considered responsive to the search warrant—put differently, the Government deemed approximately 0.4% of the search warrant documents it originally had produced in discovery actually to be responsive. *See* Ex. B. Likewise, out of the hundreds of recordings the Government produced to Defendants, it indicated in its December 22 Letter that it plans to use just two of them at trial (at least, as of now). *See* Ex. H. The remaining SEC materials—some 6.2 million documents—remain unfiltered. It stands to reason that a substantial portion of these documents are likely irrelevant, but the Government has not identified a more limited subset.

## B.  Discussion

The Court should order the Government to specify, from the millions of documents produced in discovery, the particular materials and specific communications that the Government intends to introduce at trial. This request is consistent with this District's practice under Rule 16 and the Court's inherent authority to regulate discovery.

Rule 16(a)(1)(E) requires the Government to provide three categories of documents that it "intends to rely on . . . in its case-in-chief at trial." The "overwhelming majority" of district courts in this Circuit "in accord with Second Circuit authority, favor the view that 'it is within a district court's authority to direct the Government to identify [prior to trial] the documents it intends to rely on in its case in chief.'" *United States v. Vilar*, 530 F. Supp. 2d 616, 639 (S.D.N.Y. 2008) (quoting *Giffen*, 379 F. Supp. 2d at 344; *see, e.g.*, *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (directing the Government "to identify to the defendants those documents which

it intends to offer, or to use or to refer to in connection with the testimony of any witness, on its case in chief"); *United States v. Chalmers*, 474 F. Supp. 2d 555, 572–73 (S.D.N.Y. 2007) (directing the Government to disclose an exhibit list prior to trial based on, *inter alia*, "the large volume of documents produced by the Government thus far"); *United States v. McDonald*, 2002 WL 2022215, at *3 (E.D.N.Y. Aug. 6, 2002) ("[A]lthough the government is not required to organize its documentary evidence, in this case the government shall be required to identify documents upon which it will rely.").

Requiring the Government to produce an exhibit list prior to trial furthers "the fair and efficient administration of [a] case," because it is likely "that the Government will rely to a significant extent on only a portion of those documents at trial." *Vilar*, 530 F. Supp. 2d at 640. Courts in this Circuit have found that "pre-trial disclosure of an exhibit list best serves Defendants' right to a fair trial, and is likely to aid in the orderly presentation of the Government's and the Defendants' respective cases at trial." *Id*. This is particularly so in cases like this one, where the Government has produced millions of documents (most of which have been in the Government's possession for years)—and even where the Government has narrowed some subsets of responsive documents and recordings, millions of documents remain unfiltered (and pressing questions over what evidence will be used at trial persist). *See United States v. Upton*, 856 F. Supp. 727, 748 (E.D.N.Y. 1994) (querying "why defendants should be kept in the dark until trial as to which specific documents the government will contend were falsified in furtherance of the scheme outlined in [the Indictment]" and finding "[t]he purpose of requiring the government to identify which documents it will rely upon at trial in a situation . . . where there are thousands of documents . . . is to allow the defendant to adequately prepare for his or her defense.").

Numerous courts have granted similar requests in complex, white collar prosecutions involving voluminous discovery. For example, in *United States v. Turkish*, the defendant sought "a direction to the government to indicate which of the approximately 25,000 documents relating to this case in the Government's possession it intends to use at trial, rather than 'burying the defendant in paper' by merely generally making all of the documents available to defendants." *Turkish*, 458 F. Supp. at 882. The court granted the motion under the authority of Rule 16. *Id.*[15]

In *United States v. Poindexter*, 727 F. Supp. 1470, 1472, 1484 (D.D.C. 1989) when the government produced over 300,000 documents in discovery, the defendant argued that the government's Rule 16 obligations required more than to merely "identify several thousand pages, any of which it 'may' rely on at trial." The court agreed, holding that "[t]his broad brush approach . . . is not sufficient to meet [the government's] obligations" under Rule 16. *Id*. The court ruled that basic fairness required the government to, within thirty days of its order:

> identify with greater specificity those among these thousands of documents in the financial, calendar, and diary areas that it intends to use at trial. This notification will not prevent the government from later introducing other documents from these materials on a limited scale, but it will give the defendant some notice as to which among the thousands of documents are likely to be part of the government's case-in-chief.

*Id*. (citing *Turkish*, 458 F. Supp. at 882). As in *Turkish*, the court further ordered the government to "identify all documents on which a witness will rely or to which he will refer." *Id*.

Relying on *Turkish*, *Poindexter*, and *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987), the court in *Upton* also required early disclosure of the government's exhibit list. *Upton*,

---

[15] Similarly, in *United States v. Feldman*, 731 F.Supp. 1189, 1200 (S.D.N.Y.1990), the Court found that, in a complex tax evasion case "where all concede that a significant number of documents have been produced by the government and will presumably be used at trial, it is right to narrow the field before trial in order to allow more effective case preparation by the defense." Here, there is no dispute that the universe of documents and data currently produced far exceeds the quantity of information at issue in *Turkish* and *Feldman*.

856 F. Supp. at 747–48. The defendants in *Upton* were charged with falsifying airplane maintenance records for Eastern Air Lines. *Id.* at 733. In discovery, the government produced "thousands of pieces of paper." *Id.* at 747. However, similar to what has happened in this case, of those "thousands" of pages, the indictment only put the defendants on notice of a handful which the government actually claimed were "falsified." *Id.* The court ordered the government to specifically identify the falsified records:

> The purpose of requiring the government to identify which documents it will rely upon at trial in a situation such as this - where there are thousands of documents - is to allow the defendant to adequately prepare his or her defense. General familiarity with the nature of the documents, as in this case, will not allow defendants to do that if they are not informed which documents include the allegedly falsified maintenance information and which documents the government witnesses will refer to or rely upon.

*Id.* at 748; *see also Chalmers*, 474 F. Supp. 2d 573 (directing the government to disclose an exhibit list prior to trial based, in part, on "the large volume of documents produced by the Government thus far").

## **CONCLUSION**

For all the foregoing reasons, Gentile and Schneider respectfully request that the Court grant Defendants' motion to compel.

Dated: March 8, 2022

Respectfully submitted,

**ARENTFOX SCHIFF LLP**                    **KOBRE & KIM LLP**

/s/ Glenn Colton                          /s/ Sean S. Buckley
Glenn Colton                              Sean S. Buckley
ARENTFOX SCHIFF LLP                        Matthew I. Menchel
1301 Avenue of the Americas, 42nd Floor    A. Zoe Bunnell

New York, NY 10019
Telephone: (212) 484-3900
glenn.colton@arentfox.com


Laura Zell
ARENTFOX SCHIFF LLP
1717 K Street NW
Washington, DC 20006
Telephone: (202) 857-6032
laura.zell@arentfox.com

*Attorneys for Defendant Jeffry Schneider*

Alexandria E. Swette
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Sean.Buckley@kobrekimcom
Matthew.Menchel@kobrekim.com
Zoe.Bunnell@kobrekim.com
Alexandria.Swette@kobrekim.com

*Attorneys for Defendant David Gentile*