UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

                                             21 CR 54 (DG)

DAVID GENTILE, et al.

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S RESPONSE
TO DEFENDANT GENTILE'S MOTION TO SUPPRESS MATERIALS SEIZED DURING
THE FEBRURAY 28, 2019 PREMISES SEARCHES

                              BREON PEACE
                              United States Attorney
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

LAUREN H. ELBERT
ARTIE MCCONNELL
GAREN S. MARSHALL
Assistant U.S. Attorneys
(Of Counsel)

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT                                                                1

RELEVANT BACKGROUND                                                            2

    I.    The Investigation into GPB                                                2

    II.   The Search Warrants                                                          3

    III.  Execution and Production of Materials                                6

LEGAL STANDARD                                                                    8

    I.    Probable Cause                                                                8

    II.   The Presumption of Validity                                              9

    III.  Particularity and Breadth                                                  11

    IV.  Good Faith Exception to the Exclusionary Rule                   14

ARGUMENT                                                                              15

    I.    The Affidavits Were Not False or Misleading and No *Franks* Hearing is Warranted

                        16

    II.   The Warrants Satisfy the Particularity Requirement               18

    III.  Gentile Had No Reasonable Expectation of Privacy             19

    IV.  The Good Faith Doctrine Would Apply to Preclude Suppression     21

    V.   Execution Was Timely and Proper Safeguards Protected Privileged Information     23

CONCLUSION                                                                          26

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum in response to defendant Gentile's motion (the "Motion" or "Def. Mot.") to suppress material seized during the judicially-authorized searches GPB Capital Management LLC ("GPB") locations in Manhattan (the "Manhattan Warrant") and Garden City (the "Garden City Warrant"), New York, as well as GPB's server location in Manhattan, housed at Alphaserve Technologies (the "Alphaserve Warrant") (collectively "the Warrants"), one of defendant Gentile's companies.[1]   ECF Dkt. No. 156.

Defendant Gentile challenges the evidence seized from the Warrants, arguing that (1) there was no probable cause; (2) deliberate misrepresentations were made in the supporting affidavits; (3) the Warrants violated the particularity requirement; and (4) the government failed to properly execute the Warrants and mishandled seized electronic evidence.   The Motion is factually inaccurate,[2] legally baseless and should be denied without a hearing.

The Warrants are supported by detailed probable cause statements and are sufficiently particularized.   Because the crimes described in the underlying affidavits are complex, wide-ranging, and pervasive to GPB's alleged business, the Warrants call for the seizure of a proportionate variety of documents and records.   This is appropriate and fully compliant with the Fourth Amendment.   Furthermore, even assuming, arguendo, that the warrant was somehow defective, which it was not, the good faith doctrine would preclude suppression in this case.

---

[1]      As the supporting affidavits and Warrants are largely identical, the response herein discusses them collectively, except where specifically noted.

[2]      Except where expressly consented to herein, the government denies any factual allegations made in the Motion.

RELEVANT BACKGROUND

I.      The Investigation into GPB

The Court is familiar with the facts and background of the investigation.   Briefly, in or about and between August 2015 and December 2018, the defendants David Gentile, Jeffry Schneider and Jeffrey Lash, together with others, engaged in a scheme to defraud investors and prospective investors in various GPB Funds through material misrepresentations and omissions relating to, among other things: (a) the source of funds used to pay monthly distribution payments to investors in several of the GPB Funds, and (b) the revenue generated by some GPB Funds in certain fiscal years.

These material misrepresentations and omissions induced investors to invest their capital based on their understanding that the investment strategy of those funds had been, and would continue to be, to use investor funds to purchase mature, profitable companies (the "portfolio companies") that were already generating cash flow sufficient to pay the investors' monthly distributions.   The investors were led to believe that they would receive monthly liquidity in the form of distribution payments, but that the payment of these distributions would not diminish the value of their invested capital, which would remain invested in the portfolio companies and potentially generate a substantial return in the event of a liquidity event, such as a sale or initial public offering.   In reality, the investigation revealed that from in or about and between August 2015 and December 2018, the portfolio companies frequently underperformed expectations, the monthly distribution payments were substantially derived from investor capital and, in December 2018, the monthly distribution payments were suspended.

II.    The Search Warrants

On or about February 27, 2019, the government applied for three warrants to search and seize materials from GPB's offices in Manhattan and Garden City, as well as from GPB's server housed at Alphaserve, a Gentile-controlled company in Manhattan.   The Honorable Ona T. Wang, Magistrate Judge for the Southern District of New York, authorized the Manhattan Warrant and the Alphaserve Warrant, 19-M-2030, and the Honorable Steven I. Locke, Magistrate Judge for the Eastern District of New York, authorized the Garden City Warrant, 19-M-182.   The Garden City Warrant is attached hereto as Exhibit A, and the Manhattan and Alphaserve Warrants are attached hereto as Exhibit B.

The Warrants described the locations to be searched and the items to be seized with specificity.   The Manhattan Warrant identified the property to be searched as "The Computer Server And Any Laptop Computer Used By David Gentile, Michael Barbagallo, Melissa Aurigemma and Others, Stored Inside the Offices Of GPB Capital Holdings, Located on the Second Through Sixth Floors Of 535 West St 24th Street, New York, New York, and Inside the Locked and Closed Containers or Items Contained Therein," and the Alphaserve Warrant identified the property be searched as "The Computer Server Housed at Alphaserve Technologies, 104 West 40th Street, New York, New York."   Exhibit B, pp. 1-2, 27-28.   With respect to the Garden City Warrant, the property to be searched was identified as "GPB Capital Holdings' Accounting Offices, Located on The First And Second Floors Of Gentile Pismeny and Brengel,[3] 1581 Franklin Avenue, Garden City, New York and Inside the Locked and Closed Containers or Items Contained Therein."   Exhibit A, pp. 1-2, 27.

---

[3]    Gentile Pismeny and Brengel LLP was GPB's accounting firm, and GPB retained an office space at that location.

3

Regarding the property to be seized, the Warrants referenced "all records relating to violations" of a variety of criminal statutes "involving managers and employees of GPB and Ascendant, including, but not limited to, David Gentile and Jeffrey Schneider, and occurring after January 1, 2013," and included an illustrative list of over fifteen different types of such records, including, inter alia "performance and valuation summaries;" investor lists, the amounts invested, and distribution payments or redemptions; investor communications; communications with auditors; records of money transfers, such as internal memoranda and other reports; records and communications related to audited financial statements; marketing materials; records relating to performance guarantees or the source of funds or calculations for distributions; broker dealer due diligence records; and documents relating to investor fees.   Exhibit A 28-30; Exhibit B, pp. 29-34.   Additional qualifying language pertained to electronic storage media, such as computers or data retrieved pursuant to the Alphaserve Warrant.

The two affidavits (the "Affidavits") in support of the Warrants contained largely the same information.   The Affidavits set out the training and experience of the affiants; their participation in the investigation; and bases of knowledge.   See Exhibit A, pp. 1-3; Exhibit B, pp. 1-3.   The Affidavits also made clear that they did not set forth a description of all the facts and circumstances of which the affiants were aware or that had been learned through the investigation.   Id.

In the statement of probable cause, the Affidavits describe the relevant entities and provide substantial evidence that "despite distributing marketing materials representing that GPB pays investors an 8% annual return funded completely by investment profits, in reality GPB uses the capital contributions of some investors to pay the annual returns to other investors . . . from at least 2013 to the present, in the Southern District of New York, the Eastern District of

4

New York and elsewhere, David Gentile, Jeffrey Schneider, other managers and employees of GPB, together with others, engaged in a scheme to defraud investors and potential investors in GPB through material misrepresentations and omissions about, among other things, the performance, liquidity, ownership, control, and use of investments in GPB's funds."   Exhibit A, pp. 4-8; Exhibit B, pp. 4-9.   The Affidavits featured information regarding several GPB funds that derived from a variety of sources, including inter alia, high-ranking GPB employees; communications amongst GPB employees; GPB marketing materials; bank records and other documents obtained through grand jury subpoenas; audited financial statements; investor communications from various GPB funds; and materials obtained from the Securities and Exchange Commission ("SEC").   See Exhibit A, pp. 8-17; Exhibit B, pp. 8-20.   The Affidavits also detailed the use of fraudulent and backdated performance guarantees in furtherance of the scheme to deceive investors about the extent to which their monthly distribution payments were paid via cash flow from the portfolio companies.   See Exhibit A, pp. 14-15; Exhibit B, pp. 15.

The Affidavits described each location to be searched and its connection to the crimes and individuals under investigation.   See Exhibit A, pp. 14-15; Exhibit B, pp. 15-18.

A detailed description of computers, electronic storage and digital forensic analysis was included, which discussed the methods used to search and seize electronic evidence pursuant to the Warrants.   See Exhibit A, pp. 18-25; Exhibit B, pp. 18-25.   Given the nature, scope and expected volume of material, the Affidavits outlined the temporal and technical factors necessitating the copying of storage media for off-site review, rather than viewing it on-site during the search of the physical premises.   Id.   The Affidavits also discussed how reasonable execution of the Warrants would "likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage

media need not be seized or copied.   Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption.   If employees of GPB so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing function of GPB's business.   If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it."   Exhibit A, p. 25; Exhibit B, p. 25.

III.   Execution and Production of Materials

On or about February 28, 2019, the Warrants were executed at GPB's Manhattan and Garden City offices, as well as at its server housed at Alphaserve.   Counsel for GPB was present at the Manhattan office during the search and communicated with both the agents executing the warrant and members of the prosecution team during the search, which lasted several hours and concluded that same day.   Pursuant to the Warrants, electronic evidence from GPB's server was seized, as well as electronic devices such as laptops, tablets and related peripherals associated with several custodians, including Gentile.   From the Manhattan office, fifteen laptops, four hard drives and one thumb drive were seized.   These items were either forensically imaged on site during the execution of the Warrants or were taken and imaged at Federal Bureau of Investigation facilities by members of the Computer Analysis and Response Team ("CART") and subsequently returned to GPB's counsel approximately two weeks later. An inventory of the items taken or imaged pursuant to the Warrants was disclosed to the defendants as part of the government's Rule 16 discovery production.

Prior to any member of the prosecution team reviewing the seized evidence for material responsive to the Search Warrants, forensic software and other tools were utilized to

identify and segregate any potentially privileged communications or materials.   This included the use of word search techniques, such as the names, emails and other identifiers of known in-house or outside attorneys that were retained or consulted by individuals and entities associated with GPB, as well as Boolean operators.   These identifiers were provided to the government by GPB's counsel, upon the government's request, and contained well over 100 attorneys and consultants from dozens of firms.   Any items that "hit" on these searches were removed, placed in the custody of the filter team, and have not been available to any member of the prosecution team.   In total, these potentially privileged materials comprised approximately 146,601 documents.   In the case of the non-privileged documents on the prosecution side of the database, the government produced all materials that hit on subject matter search terms, which numbered approximately 492,000 documents, thereby ensuring that all defendants had any material that was likely to be relevant to their defense.

The government then undertook a more targeted analysis.   To identify materials responsive to the Warrants, the government applied subject matter search terms and keywords to the materials that were not identified as potentially privileged during the privilege screen.   These materials were produced to the defense on March 2, 2021,[4] and the government offered to make immediately available to the defendants a complete copy of the data obtained in connection with the Warrants.   The government also undertook substantial document-by-document review of the materials that hit on search terms in order to identify truly responsive material that it may seek to admit at trial, and on or about August 27, 2021, the government disclosed a subset of approximately 2,000 responsive items to the defense that could constitute trial evidence or exhibits.

---

[4]       The grand jury voted an indictment on January 29, 2021.

To comply with its discovery obligations while balancing the interests of parties who may hold privileges in certain materials seized pursuant to the Warrants, in August 2021, the government proposed a Rule 502(d) stipulation, which provided that the filter team would produce any potentially privileged materials to the defendants while preserving any and all potential privilege claims that could be asserted by any of the signatories or other privilege holders.   While GPB and defendant Lash consented, defendants Gentile and Schneider were unwilling to join the stipulation.   As the Court is aware, protracted litigation over this issue ensued, and on June 3, 2022, the Court ultimately concurred with the government's proposal to produce approximately 95,000 documents pursuant to a 502(d) Order and denied the defendants' request for protective orders and third-party privilege review.   The government produced those materials shortly thereafter.

LEGAL STANDARD

The Warrants Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."   U.S. Const. amend. IV.

I.     Probable Cause

Probable cause is a "flexible, common-sense standard," Texas v. Brown, 460 U.S. 730, 742 (1983), which requires a case-by-case analysis of the totality of the circumstances, see Illinois v. Gates, 462 U.S. 213, 230 (1983).   A valid search warrant rests on a proper finding that probable cause exists to believe (1) that a crime has been committed, and (2) that evidence or instrumentalities of the crime will be found in the place to be searched.   See United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983); see also Warden v. Hayden, 387 U.S. 294, 307 (1967) (warrant may be issued to search for anything where there is a connection "between the

item to be seized and criminal behavior").   While probable cause requires more than generalized

suspicion, it "does not require a prima facie showing" of criminality.   United States v. Martin,

426 F.3d 68, 74 (2d Cir. 2005).   Instead, probable cause may be established by a mere

"probability or substantial chance of criminal activity."   United States v. Bakhtiari, 913 F.2d

1053, 1062 (2d Cir. 1990).   Review for existence of probable cause is not de novo; "[a]

magistrate's determination of probable cause should be paid great deference by reviewing

courts."   United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993) (quotation marks and

citations omitted); see also Illinois v. Gates, 462 U.S at 236. "[T]he duty of a reviewing court is

simply to ensure that the magistrate had a substantial basis for conclud[ing] that probable cause

existed."   Jones v. United States, 362 U.S. 257, 271 (1960) (internal quotation marks omitted).

II.      The Presumption of Validity

              Warrant affidavits are entitled to a "presumption of validity."   Franks v.

Delaware, 438 U.S. 154, 171 (1978).   As to a motion to suppress, "[o]nce the magistrate judge

has issued a warrant, the reviewing court must give substantial deference to the magistrate's

probable cause determination.   As the Supreme Court has long held, after-the-fact scrutiny by

courts of the sufficiency of an affidavit should not take the form of de novo review."   United

States v. Davis, No. 17-CR-615 (JMA), 2021 WL 826261, at *5 (E.D.N.Y. Mar. 3, 2021).

              Under the Supreme Court's framework in Franks v. Delaware, to obtain a hearing

based on allegations of a search warrant affiant's deliberately misleading and recklessly false

statements, "a defendant must make *a substantial preliminary showing* that: (1) the claimed

inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard

for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable

cause finding."   438 U.S. 154, 155-56 (1978) (emphasis added); United States v. Salameh, 152

9

F.3d 88, 113 (2d Cir. 1998) (internal quotation marks omitted); see also United States v.

Awadallah, 349 F.3d 42, 64 (2d Cir. 2003).   The Supreme Court explained the limited

circumstances where such a hearing is required in Franks:

> to mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine.   There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.   Allegations of negligence or innocent mistake are insufficient.

438 U.S. at 171.

A defendant seeking to make the first required showing of an intentional or reckless

misstatement or omission must show more than inadvertent error.   "[E]very statement in a written

affidavit does not have to be true," United States v. Martin, 426 F.3d 68, 73 (2d Cir. 2005), and

"the mere intent to exclude information is insufficient…[because] every decision not to include

certain information in the affidavit is intentional insofar as it is made knowingly…An affiant

cannot be expected to include in an affidavit every piece of information gathered in the course of

an investigation." Awadallah, 349 F.3d at 67-68 (internal quotation marks omitted).   "To prove

reckless disregard for the truth," a defendant must "prove that the affiant in fact entertained serious

doubts as to the truth of his allegations." Id. (quoting United States v. Whitley, 249 F.3d 614, 621

(7th Cir. 2001)).

The moving defendant must also prove that any misstatements or omissions alleged

were material.   To determine if the false information was material, i.e., "necessary to the issuing

judge's probable cause determination . . . a court should disregard the allegedly false statements

and determine whether the remaining portions of the affidavit would support probable cause to

issue the warrant." United States v. Canfield 212 F.3d 713, 718 (2d Cir. 2000) (citing Salameh,

152 F.3d at 113).   "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate.   Id. (quoting United States v. Ferguson, 758 F.2d 843, 848 (2d Cir. 1985)).   Likewise, if the omitted material had been included in the affidavit and the affidavit would still establish probable cause, the omissions were not material to the probable cause determination and suppression is inappropriate. See United States v. Rajaratnam, 719 F.3d 139, 146 (2d Cir. 2013).   "Omissions are not subject to the same high level of scrutiny as misstatements."   United States v. Rivera, 750 F. Supp. 614, 617 (S.D.N.Y. 1990).   As the Fourth Circuit has written: "the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory."   United States v. Colkley, 899 F.2d 297, 301 (4th Cir.1990).   "[F]acts omitted from a warrant affidavit are not material unless they cast doubt on the existence of probable cause . . . The omitted information and the information in the affidavit must be considered as a whole in determining if probable cause continues to exist."   United States v. Marin–Buitrago, 734 F.2d 889, 895 (2d Cir. 1984) (citations omitted); see United States v. Zagari, 111 F.3d 307, 322 (2d Cir. 1985) (no Franks hearing required where special agent, relying in part on an informant, did not reveal impeachment material that had a potential bearing on the informant's credibility).

III.   Particularity and Breadth

The particularity requirement of the Warrants Clause, which is distinct from the probable cause requirement, "guards against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990); see also United States v. Clark, 638 F.3d 89, 94 (2d Cir. 2011) ("Particularity concerns frequently arise in circumstances where the

description in the warrant of the place to be searched is so vague that it fails reasonably to alert executing officers to the limits of their search authority[.]"). The requirement is satisfied if the warrant, including its attachments, enables the executing officer to ascertain and identify with reasonable certainty those items that the magistrate judge has authorized him or her to seize. See Groh v. Ramirez, 540 U.S. 551 (2004); United States v. Rosa, 626 F.3d 56, 58 (2d Cir. 2010).

To satisfy the particularity requirement, the crime or crimes under investigation generally should be apparent from the face of the warrant.   United States v. Galpin, 720 F.3d 436, 445 (2d Cir. 2013) ("[A] warrant must identify the specific offense for which the police have established probable cause."); United States v. Vilar, No. 305-CR-621 (KMK), 2007 WL 1075041, at *22 (S.D.N.Y. 2007) ("warrants are generally found to be insufficiently particular where 'nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken'") (quoting United States v. George, 975 F.2d 72, 76 (2d Cir. 1992).   In this regard, however, a warrant that calls for seizure of "all evidence" of a given crime or crimes is sufficiently particular if it offers a list of illustrative items.   See Riley, 906 F.2d at 844-45 (warrant containing list of illustrative items to seize was sufficiently particular notwithstanding provision allowing, as well, seizure of "other items that constitute evidence of the offenses" identified); United States v. Young, 745 F.2d 733, 759-60 (2d Cir. 1984) (warrant allowing seizure of listed items plus other evidence of the crimes specified was sufficiently particular); United States v. Lustyik, 57 F. Supp. 3d 213, 227-28 (S.D.N.Y. 2014) (warrant permitting seizure of all "evidence, fruits, or instrumentalities" of specified crimes was sufficiently particular because it contained "an illustrative list of items to be seized," even though illustrative list was preceded by phrase "including but not limited to"); United States v. Jacobson, 4 F. Supp.

2d 515, 524 (E.D.N.Y. 2014) ("The reference to particular offenses and the use of an illustrative list of items to seize sufficiently particularized the warrants.").

The broader the crime or crimes under investigation, the broader the categories of documents and records that may properly be seized.   See, e.g., Jacobson, 4 F. Supp. 2d at 522 (breadth of warrant, which contained no timeframe limitation, was justified because "the crimes under investigation were complex and concerned a long period of time, not simply one or two dates of criminal activity"); United States v. Levy, No. 11-CR-62 (PAC), 2013 WL 664712, at *8 (S.D.N.Y. 2013) (in pump-and-dump case, broad warrant with no timeframe limitation was justified by breadth and complexity of fraud described in underlying affidavit); United States v. Dupree, 781 F. Supp. 2d 115, 149 (E.D.N.Y. 2011) ("The nature of the crime . . . may require a broad search," such as where "complex financial crimes are alleged"); United States v. Hernandez, No. 09-CR-625 (HB), 2010 WL 26544, at *9 (S.D.N.Y. 2010) (broad warrant with no timeframe limitation justified by complexity of investigation); United States v. Cohan, 628 F. Supp. 2d 355, 362 (E.D.N.Y. 2009) ("the degree to which a warrant must state its terms with particularity varies inversely with complexity of the criminal activity investigated") (quotation marks, citation, and alteration omitted).

Indeed, where there is probable cause to believe that a business under investigation is "'pervaded' or 'permeated' with fraud, broad language used in a search warrant will not offend the particularity requirement." United States v. D'Amico, 734 F. Supp. 2d 321, 360 (S.D.N.Y. 2010) (emphasis added) (quoting U.S. Postal Serv. v. C.E.C. Servs., 869 F.2d 184, 187 (2d Cir. 1989)); United States v. Feng Ling Liu, No. 12-CR-934 (RA), 2014 WL 101672, at *7 (S.D.N.Y. 2014) (applying "all records" doctrine to uphold warrant against particularity and overbreadth challenges); Hernandez, 2010 WL 26544, at *10 (same); United

States v. Bowen, 689 F. Supp. 2d 675, 683 (S.D.N.Y. 2010) ("The all records exception allows

for the seizure of all of an enterprise's records when the enterprise is primarily engaged in

unlawful activity and sufficient evidence is presented of the pervasiveness of that unlawful

activity within the enterprise."); United States v. Abboud, 438 F.3d 554, 575 (6th Cir. 2006) ("In

a business fraud case, the authorization to search for general business records is not overbroad.").

In such a case, "it is not necessary that the affidavit supporting the search warrant set forth

specific factual evidence demonstrating that every part of the enterprise in question is engaged in

fraud." United States v. Burke, 718 F. Supp. 1130, 1139 (S.D.N.Y. 1989); Feng Ling Liu, 2014

WL 101672, at *7. "Rather, the affidavit need contain only sufficient factual evidence of

fraudulent activity from which a magistrate could infer that those activities are 'just the tip of the

iceberg.'" Burke, 718 F. Supp. at 1139 (citation omitted).

IV.     Good Faith Exception to the Exclusionary Rule

      Even if a warrant lacks probable cause or particularity, or is overbroad, "[t]he fact

that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary

rule applies."  Herring v. United States, 555 U.S. 135, 140 (2009).   In fact, exclusion should be

a "last resort" rather than a "first impulse."  Id.   Thus, suppression will not be warranted where

the evidence at issue was "obtained in objectively reasonable reliance on a subsequently

invalidated search warrant."  United States v. Leon, 468 U.S. 897, 922 (1984).

      Although the burden is on the government to establish good faith, "[searches

pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant

issued by a magistrate normally suffices to establish that a law enforcement officer has acted in

good faith in conducting the search."  Id.   Accordingly, in light of this exception, "[m]ost

searches will be upheld."  United States v. Rickard, 534 F. App'x 35, 37 (2d Cir. 2013)

(summary order).   Only if one of the following circumstances obtains will the searching officers' good faith not have been established:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

 Clark, 638 F.3d at 100 (quotation marks and citations omitted). The "so lacking in indicia of probable cause" concern "most frequently arises when affidavits are bare bones, i.e., totally devoid of factual circumstances to support conclusory allegations."   Id. at 103. "At the opposite end of the spectrum are cases in which a defective warrant issued based on an affidavit providing detailed factual allegations in support of probable cause."   Id. "Such cases almost invariably demonstrate reasonable reliance."   Id.

Finally, even if a court finds that the searching officers' reliance on the warrant was unreasonable for one or more of the reasons identified above, suppression still will not be warranted if there is an absence of deliberate, culpable conduct: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at 144; see also Rosa, 626 F.3d at 66 (emphasizing that suppression will not be warranted, even if standards for overcoming qualified immunity are met, absent evidence of deliberate and culpable behavior by law enforcement agents).

## ARGUMENT

Defendant Gentile argues that (1) the Warrants fail to adequately "specify the premises to be searched, the target offenses for which they were obtained, and the items that were intended to be seized as evidence, fruits, or instrumentalities of those inadequately alleged

target offenses"; (2) the underlying affidavits contain knowingly false and misleading information; and (3) the government failed to execute the warrants properly.   None of these arguments have merit, and the Motion should be denied.

I.      The Affidavits Were Not False or Misleading and No *Franks* Hearing is Warranted

Defendant Gentile cannot and does not make the requisite showing for suppression or a <u>Franks</u> hearing.   Indeed, his allegations of "deliberate falsehood and reckless disregard for truth"—the standard for such relief—are largely semantic and predicated on critiques of the government's accounting methodology,[5] interpretations of marketing materials and the suitability of disclaimers,[6] and the completeness of GPB's own financial and business records.[7] Gentile invites this Court to reinvestigate the defendant's offense conduct and comb through over 500 pages of exhibits in order to reach the conclusion he advocates.   The Court should deny this invitation and the Motion on these grounds.

The defendant fails to address the first prong of the <u>Franks</u> test at all other than in the most conclusory way, and the Warrant affidavits themselves are candid in stating that they are "being submitted for the limited purpose of establishing probable cause" and do not set forth all of the affiants' knowledge about the investigation or "all the facts and circumstances of which [the affiant] is aware."   All omissions of information in the affidavits are made "knowingly" in the sense that affiants do not include every detail of which they are aware— this does not render

---

[5]      "The Government [has never] articulated its understanding of the process by which GPB calculated 'cash flow from operations.'"   Def. Mot., pp. 19-20

[6]      "Affidavits fail to include the memoranda's myriad critical disclosures adjacent to the ones cited."   Def. Mot., p. 19.

[7]      "Affidavits fail, however, to also inform the Magistrate Judges that [GPB spreadsheets regarding the coverage ratio for distribution payments] were maintained to track internal financials only, were often incomplete, and did not even purport to reflect final financial information, let alone audited financial information."   Def. Mot., p. 22.

16

them "omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead" as <u>Franks</u> requires.   <u>Awadallah</u>, 349 F.3d at 67-68 (internal quotation marks omitted).   Indeed, "omissions are not subject to the same high level of scrutiny as misstatements," <u>United States v. Rivera</u>, 750 F. Supp. 614, 617 (S.D.N.Y. 1990), and an affiant "does not necessarily act with reckless disregard for the truth simply because he or she omits certain evidence that a reviewing court, in its judgment, [may] consider to be clearly critical." <u>Rajaratnam</u>, 719 F.3d at 154 (internal quotation marks omitted).   The fact that the defendant's arguments about the inaccuracy of the government's conclusions requires the Court to adopt alternate definitions of industry terms or analyze of hundreds of pages of bank records undercuts their argument that any purportedly false or omitted information was done deliberately or recklessly, as <u>Franks</u> requires.

Nor can the defendant satisfy the second prong of <u>Franks</u> regarding materiality. Notably, the defendant mentions the fraudulent performance guarantees only in passing,[8] disregards the blatantly false statements about GPB's past performance in marketing materials, and completely ignores the fact that "during the investigation, agents have interviewed a number of current and former employees of GPB, as well as members of the company that operates a number of GPB owned automobile dealerships.   Those individuals stated that high-level GPB employees, including Gentile and Schneider, frequently discussed the fact that, contrary to GPB's representations to investors and potential investors, that GPB's distributions to investors were not derived from business operations of GPB-held companies."   Exhibit A at p. 14, Exhibit

---

[8]      Circularly, the defendant disputes the claim that "GPB Automotive fund paid its distributions using investor funds every year since 2015," Def. Mot. at p. 6, and cites "the 2015 audited financial statements for GPB Automotive," which were inflated by a fraudulent performance guarantee, as the basis for the government's "factual misrepresentations."

B at p. 14.

Regardless, any inaccuracies or omissions in the affidavits were hardly intentionally or recklessly misleading, and certainly not material when viewing the totality of the respective affidavits.   The defendant is free to employ these arguments at trial, but they are unpersuasive in this context.

II.     The Warrants Satisfy the Particularity Requirement

The Warrants are sufficiently particularized and not overbroad, considering the crimes being investigated and the probable cause supporting the searches.   As the Second Circuit has recognized, warrants are often framed as permitting seizure of any and all evidence of specified crimes, "including but not limited to" illustrative categories of documents and records. Courts routinely uphold such warrants against particularity challenges, notwithstanding the apparent blanket permission to seize "all evidence," reasoning that the illustrative list, coupled with the reference to the crimes of which evidence is sought, supplies sufficiently limiting guidance.   See, e.g., Riley, 906 F.2d at 843-45; Young, 745 F.2d at 759-60; Lustyik, 57 F. Supp. 3d at 227-28 (warrant permitting seizure of all "evidence, fruits, or instrumentalities" of specified crimes was sufficiently particular because it contained "an illustrative list of items to be seized," even though illustrative list was preceded by phrase "including but not limited to"); Jacobson, 4 F. Supp. 2d at 524 (upholding warrant for "[a]ny and all records, data and correspondence constituting evidence, fruits and instrumentalities of" specified crimes, "in any form wherever that they may be stored or found including, but not limited to" specified categories); cf. United States v. Buck, 813 F.2d 588, 591 (2d Cir. 1987) (warrant that permitted seizure of "any papers, things or property of any kind relating to" specified crime was insufficiently particular because unaccompanied by an illustrative list).

18

Accordingly, the affidavits' showing of probable cause, the references to the crimes under investigation, the clear time limitation, the description of the premises to be searched and the list of illustrative evidence sought makes the Warrants sufficiently particular. See United States v. DiScala, 14-CR-399 (ENV), 2018 WL 1187394, *16 (E.D.N.Y. March 6, 2018) (warrant sufficiently particular where it "limited all searches to specified crimes: evidence, fruits and instrumentalities of violations of 18 U.S.C. §§ 371, 1341, 1343, and 1349, as well as 15 U.S.C. §§ 78j(b) and 78ff" and contained time limitations, descriptions of premises and illustrative list of possible items).

III.     Gentile Had No Reasonable Expectation of Privacy

Gentile's motion must also be denied because he had no reasonable expectation of privacy in the digital evidence seized via the challenged Warrants.   While the determination of an individual's reasonable expectation of privacy is a fact specific inquiry, "[c]ourts have routinely found that employees have no reasonable expectation of privacy in their workplace computers where the employees are informed that they will be monitored."   Williams v. Rosenblatt Secs. Inc., 136 F. Supp. 3d, 593, 607 (S.D.N.Y. 2015) (internal quotation marks omitted); see also United States v. Simons, 206 F.3d 392, 398 (4th Cir. 2000) (no reasonable expectation of privacy where employee was aware that company was overseeing his internet use); Muick v. Glenayre Electronics, 280 F.3d 741, 743 (7th Cir. 2002) (no reasonable expectation of privacy in employer-furnished laptop where employer announced it could inspect the laptop); United States v. Angevine, 281 F.3d 1130, 1134-35 (10th Cir. 2002) (no reasonable expectation of privacy in employer-issued laptop computer).   Courts have often weighed four factors in assessing an employee's reasonable expectation of privacy in a work computer or email account:

(1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do the third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

United States v. Finazzo, No. 10-CR-457 (RRM), 2013 WL 619572, at *7 (E.D.N.Y. Feb. 19, 2013), aff'd, 682 F. App'x, 6, 16 (2d Cir. 2017) (citing In re Reserve Fund Secs. & Deriv. Litig., 275 F.R.D. 154, 160 (S.D.N.Y. 2011) and In re Asia Global Crossing, LTD., 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005)).

GPB's corporate policy reflected that its employees lacked any expectation of privacy in the company's computer systems or email accounts, including personal non-work-related messages and all data stored on company computers.   See GPB Capital Employee Handbook at 17-18 (Nov. 1, 2014) attached hereto as Exhibit C.   Specifically, the employee handbook provides that employees were only to use GPB's technology resources for "incidental personal uses," and that all data and information stored on the company's servers, including personal messages, are company property.   Id. at 17.   Employees are expressly informed that they "have no right of privacy and should have no expectation of privacy with respect to any messages or information created, maintained, sent or received" on GPB computers.   Id.

Moreover, as Gentile was undoubtedly aware, GPB was an SEC-registered investment adviser, making it subject to the various rules regarding record retention and inspection by the SEC, which provide, inter alia, that all records maintained by investment advisers are subject "at any time, or from time to time, to such reasonable periodic, special, or other examinations by representatives of the Commission as the Commission deems necessary or appropriate in the public interest or for the protection of investors."   15 U.S.C. § 80b-4 (emphasis added).   Records is defined extremely broadly to include "accounts, correspondence,

memorandums, tapes, discs, papers, books, and other documents or transcribed information of any type, whether expressed in ordinary or machine language;" 15 U.S.C. § 78c, which certainly encompasses the emails and other electronic documents seized in connection with this case. Thus, under the Global Crossing test, a third party did have a right of access.

Given these facts, Gentile can have had no reasonable expectation of privacy in the electronic evidence obtained from GPB's computer system. See e.g., United States v. Nordlicht, No. 16-CR-640 (BMC), 2018 WL 705548, at *3-5 (E.D.N.Y. Feb. 2, 2018) (finding employees of SEC registered investment adviser, including founder and principal of hedge fund, had no expectation of privacy where, like here, the employee manual expressly told employees they had none, even though there was no evidence employee email was actually monitored); United States v. Finazzo, No. 10-CR-457 RRM RML, 2013 WL 619572, at *11 (E.D.N.Y. Feb. 19, 2013) (holding that attorney-client privilege was waived where employee communicated on company email with attorney as he had no reasonable expectation of privacy); In re Rsrv. Fund Sec. & Derivative Litig., 275 F.R.D. 154, 164 (S.D.N.Y. 2011) (holding that marital privilege was waived where employee communicated on company email with wife).

Given that Gentile was principal of GPB which maintained a policy expressly providing that employees had no expectation of privacy in its computer systems, and given that the SEC had the right to inspect any and all of GPB's documents at any time, he had no reasonable expectation of privacy, in which case his motion to challenge the Warrants must fail.

IV.     The Good Faith Doctrine Would Apply to Preclude Suppression

Even assuming arguendo that the Warrants were either insufficiently particularized or overbroad, and that Gentile had a reasonable expectation of privacy, the good faith doctrine would apply to preclude suppression.

21

The Affidavits were detailed, predicated on information gleaned from a variety of sources from both criminal and civil investigations into GPB, and reviewed and authorized by judges in two districts.   Certainly, a law enforcement agent would reasonably have believed that probable cause supported seizure of the documents and records described in the Warrants.   See, e.g., Clark, 638 F.3d at 103 (cases involving a "defective warrant issued based on an affidavit providing detailed factual allegations in support of probable cause" "almost invariably demonstrate reasonable reliance"); Feng Ling Liu, 2014 WL 101672, at *8-9 (even if "all records" warrant might have been overbroad, agents reasonably relied on broad statement of probable cause in concluding such a warrant was appropriate); Levy, 2013 WL 664712, at *10 ("Given the nature of the complex financial crimes and conspiracy alleged, executing officers would reasonably expect to find fairly broad categories of financial documents to be seized."); Bowen, 689 F. Supp. 2d at 684 (applying good faith exception in alternative to finding that "all records" doctrine applied); Hernandez, 2010 WL 26544, at *12 (where case was one involving complex fraud, "a government agent would likely expect to find fairly broad categories" of documents to be seized described in the warrant).   This was not a case in which any problem with particularization or probable cause to search and seize documents, including GPB's computers and servers, would have been apparent to a reasonable agent.

Thus, good faith execution of the Warrants applies on these facts.   Nothing in the warrant application was materially false or recklessly misleading; there is nothing to suggest that the Magistrate Judges abdicated their judicial role in their consideration of the applications; and, given the broad scope of the scheme detailed in the supporting applications, and the complex nature of securities fraud generally, the agents most assuredly would have reasonably presumed the warrant to be valid.

V. <u>Execution Was Timely and Proper Safeguards Protected Privileged Information</u>

   With regard to electronic storage media or electronically stored information Rule 41(e)(2)(B) provides that the "time for executing the warrant . . . refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review."   In arguing that the government "indisputably seized documents that it was not entitled to seize," Def. Mot. p. 25, defendant Gentile completely ignores the generally accepted "two-step" process contemplated by Rule 41(e)(2)(B) that is explicitly described in the Warrants.
Courts have "routinely upheld the seizure and copying of hard drives and other storage devices in order to effectuate a proper search for the categories of documents or files listed in a warrant." <u>In the Matter of a Warrant for all Content and Other Information Associated with the Email Account xxxxx@gmail.com Maintained at a Premises Controlled by Google, Inc.</u>, 33 F.Supp.3d 386, 392 (S.D.N.Y. 2014) (collecting cases).   This is because "[i]n the case of electronic evidence, which typically consists of enormous amounts of undifferentiated information and documents . . . a search for documents or files responsive to a warrant cannot possibly be accomplished during an on-site search."   <u>Id.</u>; <u>accord</u> <u>United States v. Metter</u>, 860 F.Supp.2d 205, 214 (E.D.N.Y. 2012) ("off-site imaging is a necessity of the digital era").   As the Second Circuit has recognized, "[i]t is comparatively commonplace for files on a computer hard drive to be so intermingled that they cannot feasibly be sorted on site," and thus, "the creation of mirror images for offsite review is constitutionally permissible in most instances, even if wholesale removal of tangible papers would not be."   <u>United States v. Ganias</u>, 755 F.3d 125, 135 (2d Cir. 2014).   As described above, this is precisely what occurred here.

   Nor is it clear what prejudice defendant Gentile has suffered as a result of any perceived delay.   Indeed, there was no delay at all, as the government's initial disclosure was

approximately two months after arrest and indictment.   This timeframe is eminently reasonable given the scope of the conduct being investigated and volume of materials at issue, and the defendant cites no law to the contrary.   See United States v. Sosa, 379 F. Supp. 3d 217, 222 (S.D.N.Y. 2019) (finding searches to be "within the bounds of reason" when they were completed "nearly three months prior to defendant's scheduled trial," declining to suppress evidence on account of the pace at which they were performed, and noting "the most logical (and fairly obvious) explanation [for delay] is one of resource allocation").   Similarly, the defendant's claim that the government has improperly retained nonresponsive materials, Def. Mot. pp. 28-29, is nonsensical and moot—on August 27, 2021, the government disclosed the approximately 2,000 responsive items to the defense that could constitute trial evidence or exhibits.   Suppression of the remaining items would be functionally irrelevant, and the assertion that the government intends to conduct continuous searches of the entire dataset without proper authorization is simply false.

The government has also taken appropriate steps to safeguard the highly tenuous privilege claims of defendants Gentile and Schneider while executing the Warrants and making subsequent disclosures.   As outlined herein and in prior filings related to the Rule 502(d) litigation, the government promptly isolated potentially privileged materials from the prosecution team using identifiers provided by GPB counsel.

Defendant Gentile's attempt to analogize the instant case to Judge Irizarry's decision in Metter is misplaced.   In Metter, Judge Irizarry suppressed evidence seized pursuant to four separate searches upon finding that those searches were executed in an unreasonable manner.   860 F. Supp. 2d 205, 216.   Finding "nothing problematic" with a warrant that authorized the seizure and imaging of 65 computer hard drives and the defendant's email

24

account, the issue in <u>Metter</u> was that the government "then retain[ed] that data with no plans

whatsoever to begin review of that data to determine whether any irrelevant, personal

information was improperly seized."   <u>Id</u>. at 215.   Specifically, as of 15 months after the

searches, the court emphasized, the government had done nothing with respect to the imaged

electronic evidence from the three premises searches and the personal email account search

returns to identify and segregate evidence that fell outside the scope of the search warrants.   <u>See</u>

<u>id.</u> at 210-11, 214-16 (concluding "[t]he government's retention of <u>all</u> imaged electronic

documents, including personal emails, without <u>any</u> review whatsoever to determine not only

their relevance to [the] case, but also to determine whether any recognized legal privileges

attached to them, is unreasonable and disturbing," and that the good faith exception did not

apply, <u>inter alia</u>, because the government "failed to commence the review, despite repeated

requests from defense counsel and directions from the Court to do so.").

      The extreme facts of <u>Metter</u> are simply not present here.   As an initial matter,

<u>Metter</u> involved electronic evidence seized from the defendant's home and his personal email

account—unlike the evidence seized from GPB's offices in this case, as to which a GPB

employee could have no reasonable expectation of privacy.   Additionally, here, as described

previously, the government took a number of steps to cull the seized electronic evidence,

including using search terms and a document-by-document review of a subset of materials;

identified responsive documents to the defense; and segregated potentially privileged materials

in consultation with GPB attorneys prior to beginning any review.   <u>See</u> United States v. Zottola,

18-CR-609 (HG), 2022 WL 3682222 *4 (E.D.N.Y. August 25, 2022) (distinguishing <u>Metter</u>

from situation where "after executing the warrants, the government narrowed its review" of "19

electronic devices seized, 14 were imaged and reviewed for responsiveness to the warrants.

Following review, the government informed [defendant] that it intended to introduce evidence from seven [of defendant's] devices at trial.").

## CONCLUSION

For the reasons set forth above, the government respectfully submits that the defendant's suppression motion should be denied.

Dated: Brooklyn, New York
         October 14, 2022

Respectfully submitted,

BREON PEACE
United States Attorney
Eastern District of New York

_____/s/_____
Lauren Howard Elbert
Artie McConnell
Garen S. Marshall
Assistant U.S. Attorneys
(718) 254-7000

Cc:   Clerk of the Court (DG)
       Defense counsel (by ECF)