UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA

        v.                                            **MEMORANDUM AND ORDER**
                                                          21-CR-54 (RPK) (PK)

DAVID GENTILE
and JEFFRY SCHNEIDER,

              Defendants.
----------------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

        Defendants' motion "to preclude the Government from introducing evidence of allegedly material misrepresentations or omissions not identified in the Indictment," or, in the alternative, to "require the Government to identify" in advance of trial "any alleged material misstatement or omission it will seek to admit into evidence and preclude evidence of any alleged misstatements not so disclosed," Mem. of Law in Supp. of Defs.' Mot. to Exclude ("Mot. to Exclude") 1 (Dkt. #243), is denied.

        I assume the parties' familiarity with the background of this case. The 22-page speaking indictment alleges that defendants participated in a scheme to defraud investors and prospective investors of GPB Capital Holdings LLC ("GPB Capital"). GPB Capital allegedly served as the general partner of several investment funds, referred to in the indictment as the GPB Funds. Defendant Gentile was the founder, owner, and Chief Executive Officer of GPB Capital. Defendant Schneider was the owner and Chief Executive Officer of Ascendant Capital LLC ("Ascendant"), the placement agent and marketing firm for the GPB Funds. GPB Holdings, LP ("Holdings I"), a fund formed in or around March 2013, and GPB Holdings II, LP ("Holdings II"), a fund formed in or around April 2015, had a primary strategy of acquiring and operating a variety of existing businesses, including car dealerships, life sciences companies, and information

1

technology service businesses. Indictment ¶¶ 2, 4 (Dkt. #1). GPB Automotive Portfolio, LP ("Automotive Portfolio"), a fund formed in or around July 2013, had a primary strategy of acquiring and operating car dealerships. *Id.* ¶ 3. The indictment alleges that as of December 2019, Holdings I raised approximately $193 million from investors, Automotive Portfolio raised approximately $675 million from investors, and Holdings II raised approximately $680 from investors. *Id.* ¶¶ 2–4.

The indictment alleges that in or about and between August 2015 and December 2018, Gentile, Schneider, and GPB Capital managing partner Jeffrey Lash, "together with others, engaged in a scheme to defraud investors and prospective investors in the GPB Funds through material misrepresentations and omissions relating to, among other things: (a) the source of funds used to pay monthly distribution payments to investors in several of the GPB Funds, including Holdings I, Automotive Portfolio and Holdings II, and (b) the revenue generated by Holdings I in 2014 and Automotive Portfolio in 2015." *Id.* ¶ 15. These misrepresentations and omissions, the indictment alleges,

> induced investors to invest their capital in Holdings I, Automotive Portfolio and Holdings II based upon their understanding that the investment strategy of those funds had been, and would continue to be, to use investor funds to purchase mature, profitable companies . . . that were already generating cash flow sufficient to pay the investors' monthly distributions. The investors were led to believe that they would receive monthly liquidity in the form of distribution payments, but that the payment of these distributions would not diminish the value of their invested capital, which would remain invested in the portfolio companies and potentially generate a substantial return in the event of a liquidity event, such as a sale or initial public offering. In reality, from in or about and between August 2015 and December 2018, the portfolio companies frequently underperformed expectations, the monthly distribution payments were substantially derived from investor capital and, in December 2018, the monthly distribution payments were suspended.

*Id.* ¶ 16.

The indictment further alleges that "[f]rom the GPB Funds' inception in 2013 until approximately 2017," Gentile and Schneider "represented to investors and prospective investors in Holdings I and Automotive Portfolio that those funds would pay to investors a monthly distribution, targeted to equal an annualized 8 percent of invested capital, and that this monthly distribution would be 'fully covered' by 'funds from operations'"—that is, "generated by the companies the funds owned, and not capital raised from investors." *Id.* ¶ 21. "These representations were made in the funds' governing documents, in written correspondence and marketing materials and during in-person meetings and presentations." *Ibid.* Gentile and Schneider also allegedly "made similar representations to investors and prospective investors in Holdings II from 2015 through late 2018." *Ibid.* According to the indictment, however, in fact, "investor capital was used to pay a material portion of the distributions made to investors in each of these funds." *Id.* ¶ 23.

The indictment explicitly identifies and describes some of the false or misleading statements allegedly made to investors regarding distribution payments, providing details on who made them, when they were made, the circumstances under which they were made, and their content, among other information. *See, e.g.*, *id.* ¶¶ 29–31, 39–40, 52. The indictment also contains less specific allegations of false or misleading statements. For example, it alleges that certain "[m]onthly account statements distributed to investors in the GPB Funds . . . depicted an investor's capital contribution for each month" that "was never reduced to reflect the extent to which distribution payments were a return of investor capital" and thereby led investors to "falsely . . . believe that the distribution payments did not diminish the value of their invested capital." *Id.* ¶ 42.

In March 2022, the defendants moved for a bill of particulars, seeking, among other things, "[i]nformation sufficient to identify each allegedly material misrepresentation or omission referenced or alluded to in the Indictment." Br. in Supp. of Mot. for Bill of Particulars 1 (Dkt. #86). Judge Gujarati denied the motion in May 2022. Considering the totality of information available to the defendants—including "the fact that there is a speaking indictment in this case," that "voluminous discovery has been produced" in an "organized" fashion, and that "there has been informal dialogue between the parties"—Judge Gujarati determined that no bill of particulars was required because the defendants had "sufficient information to be able to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should they be prosecuted a second time for the same offense." May 5, 2022 Tr. of Oral Arg. 102. Judge Gujarati added that although defendants were "not entitled to a preview of the Government's evidence or legal theories at [that] stage . . . [i]f the Defendants are able to make a showing at a later stage, of course, that any of the requested relief is required or warranted, they will, of course, I have no doubt, raise that with the Court at an appropriate time." *Id.* at 103–04.

Defendants' request that the government now be "preclude[d] . . . from introducing evidence of allegedly material misrepresentations or omissions not identified in the Indictment" is denied, because it is completely unsupported by relevant authority. Defendants invoke an unpublished district court order that provided that the government would be precluded from introducing evidence of certain misrepresentations or omissions if it failed to disclose them to defendants by a court-ordered deadline. Mot. to Exclude 10 (citing Order, *United States v. Aguilar*, No. 20-CR-390 (ENV) (E.D.N.Y. Nov. 1, 2022)). But that order provides no basis for precluding evidence in this case because the government was under no obligation here to disclose all material misrepresentations or omissions by a particular date. To the contrary, Judge Gujarati previously

4

denied defendants' request for a bill of particulars, finding that the speaking indictment, among other disclosures, gave the defendants adequate notice of the government's theory.

Defendants' alternative request that the Court "require the Government to identify" in advance of trial "any alleged material misstatement or omission it will seek to admit into evidence," *id.* at 1, is also denied. Defendants argue that they are entitled to this relief because they are "in the dark about precisely what alleged material misrepresentations or omissions the Government plans to attempt to prove at trial." *Id.* at 9. But Judge Gujarati previously determined that defendants have "sufficient information to be able to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy" in any future case, by virtue of the detailed speaking indictment and the government's additional disclosures. May 5, 2022 Tr. of Oral Arg. 102. Beyond this, the government provided defendants with a preliminary list of trial exhibits by April 5, 2024 (more than sixty days before trial), and it will provide defendants with a more tailored list of likely trial exhibits by May 6, 2024 (more than thirty days before trial). *See* Apr. 15, 2024 Minute Entry and Order. To be sure, some district courts have sometimes entered comparable disclosure orders when faced with indictments containing a "relative scarcity of specific allegedly fraudulent misstatements, omissions, and wire communications" ascribed to the defendants in the indictment. *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *22 (S.D.N.Y. Jan. 18, 2017). But the indictment here is not particularly broad or vague. It describes a scheme to defraud investors by falsely representing that payments to investors were derived from business operations, not from investor capital, and it gives numerous examples of statements by the defendants on which the government relies. Even if the statements in the indictment are understood as examples, rather than an exhaustive list, they "provide notice of the categories of statements the Government alleges to have been false or fraudulent," thereby limiting "the universe

5

of potentially implicated statements." *United States v. Johnson*, No. 16-CR-457-1 (NGG), 2017 WL 11490480, at *7 (E.D.N.Y. May 24, 2017). Accordingly, defendants' request that the government be required to identify "any alleged material misrepresentation or omission" on which it will rely at trial is denied.

## CONCLUSION

Defendants' motion *in limine* to preclude the Government from introducing at trial evidence of allegedly material misrepresentations or omissions not identified in the Indictment is denied.

SO ORDERED.

                                              */s/ Rachel Kovner*
                                              RACHEL P. KOVNER
                                              United States District Judge

Dated: April 30, 2024
       Brooklyn, New York