**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------- X
UNITED STATES OF AMERICA          :

                :    21 cr. 00054 (RPK) (PK)
         Plaintiff,     :

                :

     -against-        :    **ORAL ARGUMENT REQUESTED**

                :
DAVID GENTILE and        :
JEFFRY SCHNEIDER,      :

                :

         Defendants.   :

                :
------------------------------------------------------- X

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO LIMIT IMPROPER "SUMMARY" SLIDES AND TESTIMONY**

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................ **1**

**DISCUSSION** ..................................................................................................... **1**

   I.   MANY OF PETRON'S SLIDES ARE NOT FLOW OF FUNDS ANALYSIS OR
PROPER SUMMARY UNDER RULE 1006 ......................................................... 1

      A.   The Court Should Exclude Slides That Present Conclusions and Argument .............. 2

      B.   The Court Should Exclude Slides That Reproduce  Non-Voluminous Documents ..... 3

      C.   Petron's New Slides Purporting To Summarize Fees  "Flowing" to Defendants Are
Inadmissible ................................................................................................ 4

   II.   IF PETRON'S CHARTS AND TESTIMONY ARE PERMITTED, THE JURY
SHOULD BE CAREFULLY INSTRUCTED ON THEIR LIMITATIONS AND THE
CHARTS SHOULD NOT BE AVAILABLE DURING DELIBERATIONS ........................... 6

   III.   DISCUSSION OF PETRON'S CREDENTIALS SHOULD BE LIMITED AND
MENTION OF HIS CERTIFIED FRAUD EXAMINER LICENSE PRECLUDED ................. 7

**CONCLUSION** ................................................................................................. **9**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Castaldi v. Land Rover N. Am., Inc.*,
   363 F. App'x 761 (2d Cir. 2009) ............................................4

*Gordon v. United States*,
   438 F.2d 858 (5th Cir. 1971) ...............................................6

*United States v. Aguilar*,
   No. 20-CR-390 (ENV) (E.D.N.Y.) ...........................................8

*United States v. Barayev*,
   No. 18-CR-318 (ERK) (E.D.N.Y.) ...........................................8, 9

*United States v. Barnwell*,
   No. 15 Cr. 620 (NSR), 2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017)...................8

*United States v. Bray*,
   139 F.3d 1104 (6th Cir. 1998) .............................................2, 3

*United States v. Dolney*,
   No. 04-CR-159 (NGG), 2005 WL 2129169 (E.D.N.Y. Sept. 1, 2005), *aff'd sub
   nom. United States v. Pirgousis*, 290 F. App'x 388 (2d Cir. 2008) .........................4

*United States v. Ho*,
   984 F.3d 191 (2d Cir. 2020)...............................................6

*United States v. Nordlicht*,
   No. 16-CR-640 (BMC) (E.D.N.Y. June 6, 2019) ...................................8

*United States v. Norris*,
   No. 08-CR-343 (LEK), 2010 WL 11463301 (N.D.N.Y. Aug. 24, 2010)................7

*United States v. Small*,
   No. 16-CR-640 (BMC) (E.D.N.Y) ...........................................8

*UPS Store, Inc. v. Hagan*,
   No. 14-cv-1210, 2017 WL 3309721 (S.D.N.Y. Aug. 2, 2017)................7

**Other Authorities**

Federal Rule of Evidence 702.........................................8

Federal Rule of Evidence 1006.....................................1, 2, 3, 5

## INTRODUCTION

The majority of Petron's slides and related testimony exceed the bounds of Rule 1006 and are not proper flow-of-funds analyses. They are suffused with improper conclusions, do not summarize voluminous records, and are substantially more prejudicial than probative. The slides and testimony should therefore be excluded. At a minimum, the Court should impose safeguards and limitations outlined in Defendants' opening motion to mitigate these risks.

## DISCUSSION

### I.    MANY OF PETRON'S SLIDES ARE NOT FLOW-OF-FUNDS ANALYSIS OR PROPER SUMMARY UNDER RULE 1006

The Government asks this Court to permit Petron's purported "summary" slides and testimony because it says "[c]ourts in this district have routinely permitted flow-of-funds testimony *like Mr. Petron's* to be admitted as summary evidence under Rule 1006 and provided to the jury during deliberations." Govt Opp. at 2 (emphasis added). The Government cites four such cases, and while it references court transcripts for each, the Government provides none of the corresponding summary slides and instead relies on its own ipse dixit to establish that those slides are "like Mr. Petron's". Since Defendants and the Court do not have an opportunity to evaluate those slides, and the Defendants do not have an opportunity to demonstrate they are inapposite, the Government's bald assertion should be given no weight. Indeed, recently, this Court expressed its view to the Government that "[i]t would have been helpful to have declarations in this case if the Government wants me to rely on factual assertions." April 22, 2024 Tr. of Oral Arg. at 51:18-20.

While it is true that flow-of-funds testimony can be proper summary evidence under Federal Rule of Evidence 1006, and, indeed, some of Petron's slides here are proper flow-of-funds summary exhibits, many of his slides in this case go far beyond a straightforward "flow of funds"

1

analysis.  They go several steps farther than merely summarizing various bank transfers reflected in voluminous bank records, and instead draw conclusions, adopt contentious terminology, display inflammatory colored markings, introduce calculations without explanation, replicate select non-voluminous documents in an argumentative depiction, and are otherwise more prejudicial than probative.  With the exception of slides 1, 3, 5, 8, 10, 12, 15 17, and 19,[1] which are summaries, the remainder of Petron's slides reflect the Government's thinly veiled effort to present opinions and argument, with the imprimatur and prestige of Petron's experience, without calling witnesses with actual knowledge of the at-issue facts.

### A.       The Court Should Exclude Slides That Present Conclusions and Argument.

Many of Petron's slides are replete with conclusions and argument, which exceed the scope of what is permissible under Rule 1006.  *See, e.g.*, *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) (Rule 1006 evidence should not be "embellished by or annotated with the conclusions of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise.").   ,

*First*, the Government's slides contain impermissible conclusions about what percentage of distributions to investors were "covered."  Colton Decl. (ECF No. 337-2), Ex. A at slides 2, 4, 6, 7, 9, 11, 13, 14, 16, 18, 20, and 21.  The Government proffers that on direct examination, it will elicit that it provided the formulas Petron used to calculate "coverage," but that is not apparent from the slides themselves.  Despite these slides including no caveats and presenting "covered" and "coverage" percentiles as though these are facts, rather than mere assumptions or conclusions,

---

[1] Defendants previously objected to Petron's Slides 1, 3, 8, 10, 15, and 17 on the grounds that they contained undisclosed assumptions and failed to articulate with specificity the materials being summarized.  At the request of the defense, the Government has since provided the defense with additional information, which has rendered their objections to these slides moot.  The defense attempted to meet and confer with the Government before filing the instant motion, but did not receive a response in advance of the Court's filing deadline.

the Government still intends for them to be "in the jury room during…deliberations."  Govt Opp. at 3.  That is improper and prejudicial because there a reasonable chance jurors will not recall the caveats brought up during the testimony.[2]

*Second*, Petron's Slide 22 is not a proper summary exhibit because it "contain[s] elements of argumentation" that are "the functional equivalent of a mini-summation by the chart's proponent every time the jurors look at it."  *Bray*, 139 F.3d at 1110.  Indeed, Slide 22 does not, in fact, "summarize" any data.  Instead, the Government has hand-selected eight account transfers (among more than dozens of transfers between these same accounts) and prepared a chart with arrows pointing from account-to-account, suggesting that Petron in fact traced those funds through these accounts as depicted.  But Petron likely performed no such analysis (indeed, such an analysis can only be performed by an expert, as it requires the application of various tracing methodologies and assumptions, and the Government is adamant that Petron is not a testifying expert).  Thus, the Government's decision to present these eight account transfers in a flow chart format embeds within the proposed exhibit "the conclusions or inferences" the Government wants the jury to reach and thus transforms otherwise objective evidence into argument.  Id.

## B.  The Court Should Exclude Slides That Reproduce Non-Voluminous Documents.

---

[2] In an effort to streamline the number of conflicts requiring Court intervention, after reviewing the Government's Opposition, counsel to Mr. Schneider asked the Government whether it would consider removing Petron's "coverage" conclusions and instead simply present his calculations.  *See* Declaration of Michelle Shapiro  ¶ 2.  Specifically, counsel suggested that slides 2, 4, 9, 11, 16, and 18 display "$[amount] / $[amount] = x%", without labelling the resulting percentages as amounts "Covered by Operations," and that slides 6, 7, 13, 14, 20, and 21 remove the heading "Percentage of Distributions Covered by Income," along with the inflammatory red x's and black checkmarks, such that these slides simply display the "Net Investment Income" and "Net Income" headings  and the percentages that follow.  *Id*. at ¶ 3.  While the Government acknowledged that "coverage" is a "loaded term," they declined to make any changes and noted that "Ms. Bramer's slides are titled 'Coverage Ratio Analysis'."  *Id*. at ¶ 4.  The Government wrongly analogizes their summary witness's slides to Defendants' expert witness's slides, which were provided with full disclosure, since only experts are permitted to offer opinions and judgments.  The Government cannot offer a summary witness to do what only an expert witness can.  If the Government wanted to call its own expert witness to offer their opinions and conclusions regarding coverage, with appropriate and timely disclosures, it could have.  But it chose not to.

The Government's arguments with respect to the slides that do not summarize voluminous records are unpersuasive.  Specifically, Slide 23 displays a cancelled check (which is a page of an existing Government exhibit), Slide 24 displays a single page Government exhibit of a purported audit trail from QuickBooks, and Slides 25 and 26 depict in bar graph format a mere nine lines of data from management fee records—none of which are proper summary exhibits under Rule 1006.

The Government argues that, even if they are demonstratives, these exhibits can still go back to the jury.  (Gov't Ltr. at 3.)  But this is not the law in the Second Circuit.  *See Castaldi v. Land Rover N. Am., Inc.*, 363 F. App'x 761, 762 (2d Cir. 2009)*; see also United States v. Dolney*, No. 04-CR-159 (NGG), 2005 WL 2129169, at \*4 (E.D.N.Y. Sept. 1, 2005), *aff'd sub nom. United States v. Pirgousis*, 290 F. App'x 388 (2d Cir. 2008) ("While it is proper for pedagogical devices 'to be shown to the jury, to assist in its understanding of testimony and documents that ha[ve] been produced' they should not be 'admitted as an exhibit or taken to the jury room[.]'").  The *Castaldi* decision on which the Government relies regarding slides 25 and 26 is inapposite because it involved an expert witness who presented a demonstrative that accurately summarized the content of "primary testimony."  *Castaldi*, 363 F. App'x at 762.  Moreover, *Castaldi* did not permit the demonstrative to be admitted into evidence or available in the jury room.  *Id*.  In the event this Court concludes any of Petron's slides are proper demonstratives, they should likewise not be admitted into evidence or allowed to go to the jury room.

###   C.   Petron's New Slides Purporting To Summarize Fees "Flowing" to Defendants Are Inadmissible.

Contrary to the Government's allegation, its new slides from Petron, which purport to show the fees that "flowed" to Defendants go beyond what the Court found to be admissible at the May 23, 2024, Pre-Trial Conference.  Specifically, over Defendants' objection, the Court permitted the Government to introduce evidence of "fees paid or received for GPB Waste Management LP and

GPB Cold Storage LP." Pretrial Conf. Tr. 14. The Court's ruling was based on a representation by the Government that "[f]or the period between August 2015 and December 2018, the government seeks to introduce evidence of fees paid or received for Holdings I, Holdings II, Automotive Portfolio, GPB Waste Management, LP ('Waste Management') and GPB Cold Storage, LP ('Cold Storage')," ECF No. 306 at 8, because Defendants used the inflated success of the at-issue funds to convince investors to invest in Cold Storage and Waste Management. The Government included no funds other than Cold Storage and Waste Management in its brief, and the Court's order was similarly limited.

Days later, however, the Government produced Petron's Slides 27, 30, and 31, which include fees or simple transfers of cash from not only Holdings I, Holdings II, Automotive Portfolio, Cold Storage, and Waste Management, but from more than 20 other previously-undisclosed funds. *See* GX 3500-MPE-2-27 n.1, 2; GX 3500-MPE-2-30 n.1; GX 3500-MPE-2-31 n.1.[3] Additionally, as to Mr. Gentile, Slide 31 also includes cash transferred between GBP Capital Holdings and Mr. Gentile; however GBP Capital Holdings managed funds other than Holdings I, Holdings II, Automotive Portfolio, Cold Storage, and Waste Management. The Government has made no effort to parse out the amount of fees received by GPB Capital Storage from only those five funds (and consequently the amounts paid to Mr. Gentile that flowed only from the fees paid by only those five funds), and instead lumps them all together to inflate artificially the amounts Mr. Gentile received as a result of the alleged fraud. These slides are

---

[3] The reason the Government included all of these additional funds in these slides is, in part, because the banking records on which Petron relied in preparing them do not have the detail needed to exclude the unrelated funds. The Government failed to retain an expert to perform the asset tracing analysis that would be required to isolate only the at-issue funds (including Cold Storage and Waste Management). It should not be permitted to shoehorn in irrelevant, prejudicial material because it failed to retain an expert to perform the required analysis.

therefore inadmissible because they exceed the scope of this Court's prior order and should be excluded.  They are also more prejudicial than probative.

## II.  IF PETRON'S CHARTS AND TESTIMONY ARE PERMITTED, THE JURY SHOULD BE CAREFULLY INSTRUCTED ON THEIR LIMITATIONS AND THE CHARTS SHOULD NOT BE AVAILABLE DURING DELIBERATIONS

The Government's proposed jury instruction on page 3 of its Opposition is an insufficient safeguard to avoid unfairly prejudicing the Defendants and misleading the jury.  The jury must be instructed, as Defendants request in their Motion, that the purported summary charts are only to be considered insofar as they (1) accurately summarize admissible evidence, (2) without reliance on any opinions, inferences or assumptions that are not self-evident from the data.

Regarding accuracy, the jury must be instructed not only that it must "decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they are based," but also that a finding that the charts are *inaccurate* summaries renders them useless to the jury. *United States v. Ho*, 984 F.3d 191, 210 (2d Cir. 2020) (finding that the jury was properly instructed "that it was the jury's duty to *first* determine that they accurately reflected the evidence on which they were based.") (emphasis added); *Gordon v. United States*, 438 F.2d 858, 877 (5th Cir. 1971) ("the jury should … be satisfied that they accurately reflect other evidence in the case; and, if not so satisfied, the summaries should be disregarded").  If the jury were given the Government's proposed instruction, they may be left with the misleading impression that they may nevertheless "consider the charts, schedules, and summaries if [they] find that they are of assistance to you in analyzing and understanding the evidence" even if they are inaccurate.  Govt Opp. at 3.  This misimpression must be avoided.

Regarding opinion, the jury must be clearly instructed that Petron is not opining on the proper method for coverage, and that the jury should not rely on Petron's testimony to determine

what calculation, formula, or ratio for coverage is proper.  Because "great care must be taken to ensure that [a] proposed summary contains no annotation or suggestion, even inferential, that may be considered argumentative," *UPS Store, Inc. v. Hagan*, No. 14-cv-1210, 2017 WL 3309721, at *5 (S.D.N.Y. Aug. 2, 2017) (citation omitted), it is not enough for the Government to proffer, as it did in its Opposition, that Petron will not expressly opine on coverage.  Without a clear instruction that Petron has not provided any opinion as to the proper calculation of coverage, the jury may infer such an opinion from Petron's testimony.  An instruction that the jury is not to rely on Petron's testimony to determine how to calculate coverage is vital to ensure that Petron's purported summary does not have the improper effect of expert opinion.  *See United States v. Norris*, No. 08-CR-343 (LEK), 2010 WL 11463301, at *1 (N.D.N.Y. Aug. 24, 2010) (emphasizing the Second Circuit's caution that summary witnesses may confuse the jury where they are presented with an aura of expertise and authority).

## III.    DISCUSSION OF PETRON'S CREDENTIALS SHOULD BE LIMITED AND MENTION OF HIS CERTIFIED FRAUD EXAMINER LICENSE PRECLUDED

While Defendants urge the Court to preclude discussion of all of Petron's credentials that are not directly relevant to the proper task of a summary witness, discussion of Petron's Certified Fraud Examiner license *must* be precluded, as that is the credential most irrelevant and most likely to improperly influence the jury.  A Certified Fraud Examiner license is plainly irrelevant to a summary witness's ability to perform simple summary calculations—the sole function with which Petron is tasked.  Petron is not purported or permitted to make any analysis or provide any opinion about fraud.  Thus, this license has no value to the jury's assessment of Petron's ability and/or credibility to speak about the topics Petron is permitted to discuss.

More importantly, discussion of Petron's Certified Fraud Examiner license is highly prejudicial.  As the jury is tasked with determining Defendants' innocence or guilt with respect to various fraud claims, discussion of a non-expert witness's expertise and background in examining fraud will undoubtedly lead the jury to rely on that witness's expertise.  Because Petron is not an expert witness in this trial, such reliance would be misplaced and improper.  *See United States v. Barnwell*, No. 15 Cr. 620 (NSR), 2017 WL 1063457, at *3 (S.D.N.Y. Mar. 20, 2017) (a summary witness is "not to lend an aura of credibility to any lay opinion regarding Defendant's culpability.")  The Government cannot, as it has done, avoid meeting the Rule 702 requirements of expert disclosures and reliability measures, while reaping the benefits of the effect of expert testimony on a jury.  Discussion of these expert credentials by lay witnesses, like Petron, is prejudicial and must be precluded.[4]

The cases the Government cited where summary witnesses have discussed their expertise and background are not persuasive.  *See e.g.*, *United States v. Aguilar*, No. 20-CR-390 (ENV) (E.D.N.Y.), Tr. at 3128-29, Ex. A to Govt Opp.   (testimony that Petron is a Certified Fraud Examiner was met with no objection); *United States v. Barayev*, No. 18-CR-318 (ERK) (E.D.N.Y), Tr. at 299-300 , ECF  No. 77 (same); *United States v. Nordlicht*, No. 16-CR-640 (BMC) (E.D.N.Y. June 6, 2019), Tr. at 5850-5851, Ex. C to Govt Opp. (testimony about credentials did not involve Certified Fraud Examiner license).  Rather, this Court should follow suit of the court in *United States v. Small*, on which the Government relies elsewhere in its Opposition, wherein the summary witness, Jason Wright, did not discuss his irrelevant credentials, including his Certified Fraud Examiner license,[5] during his testimony.  No. 16-CR-640 (BMC) (E.D.N.Y.), Tr. at 1018-19, Ex.

---

[4] The Government's Opposition indicates it "expects to call fact witnesses at trial that hold CFE and CPA licenses and will seek to elicit testimony about these credentials." Govt Opp. at 4.  The Court should similarly preclude any discussion of irrelevant and prejudicial credentials for any non-expert witnesses.
[5] *See* Wright bio at https://www.stout.com/en/professionals/jason-wright.

B to Govt Opp. (limiting the discussion of Wright's credentials and background to Wright being "a forensic accountant" with an "undergraduate degree from Indiana University" and a "Juris Doctor from Chicago Kent").

In the alternative to precluding discussion of these irrelevant credentials, Defendants request that the Court carefully limit discussion of the credentials to simply informing the jury of their existence without any elaboration, in line with the *Barayev* court. *Id.* Tr. at 299-300 (Q: "Do you have any professional licenses?" A: "I do." Q: And what professional licenses do you have?" A: "I have two. I'm a Certified Public Accountant and a certified fraud examiner.").

## **CONCLUSION**

For the foregoing reasons, as well as the reasons set forth in Defendants' Motion Defendants respectfully request the relief reflected therein.

Dated:  June 6, 2024
        New York, New York

Respectfully submitted,

**KOBRE & KIM LLP**                                    **ARENTFOX SCHIFF LLP**

*/s/Sean S. Buckley*                                    */s/Glenn C. Colton*
Sean S. Buckley                                        Glenn C. Colton
Jonathan D. Cogan                                      Michelle J. Shapiro
Alexandria E. Swette                                   Apeksha Vora
A. Zoe Bunnell                                         **ARENTFOX SCHIFF LLP**
Benjamin F. Cooper                                     1301 Avenue of the Americas, 42nd Floor
Caroline A. Rivera                                     New York, NY 10019
**KOBRE & KIM LLP**                                    Telephone: (212) 484:3900
800 Third Avenue                                       Glenn.Colton@afslaw.com
New York, NY 10022                                     Michelle.Shapiro@afslaw.com
Telephone: (212) 488-1200                              Apeksha.Vora@afslaw.com
Jonathan.Cogan@kobrekim.com
Sean.Buckley@kobrekim.com                              Michael Dearington
Alexandria.Swette@kobrekim.com                         Laura Zell
Zoe.Bunnell@kobrekim.com                               **ARENTFOX SCHIFF LLP**
Benjamin.Cooper@kobrekim.com
Caroline.Rivera@kobrekim.com                           1717 K Street NW
                                                       Washington, DC 20006

9

Matthew I. Menchel
Adriana Riviere-Badell (admitted pro hac vice)
**KOBRE & KIM LLP**
201 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: (305) 967-6100
Matthew.Menchel@kobrekim.com
Adriana.Riviere-Badell@kobrekim.com

*Attorneys for Defendant David Gentile*

Michael.Dearington@afslaw.com
Laura.Zell@afslaw.com

Stephen James Binhak
**THE LAW OFFICE OF STEPHEN JAMES
BINHAK, P.L.L.C.**
One Southeast Third Ave., Suite 2600
Miami, Florida  33131
Telephone: (305) 361-5500
binhaks@binhaklaw.com

*Attorneys for Defendant Jeffry Schneider*