**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

          -against-

DAVID GENTILE and
JEFFRY SCHNEIDER,

                Defendants.

---

21-CR-54 (RPK) (PK)

**REPLY IN SUPPORT OF DEFENDANT**
**<u>DAVID GENTILE'S MOTION FOR A NEW TRIAL</u>**

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................................1

I.      ERRONEOUS JURY INSTRUCTIONS COMPROMISED THE VERDICT ................1

    A.    The Willfulness Instruction Was Erroneous and Prejudicial........................................1

    B.    Failure to Require Unanimity as to a False Statement Was Erroneous and Prejudicial 3

    C.    Failure to Define a Reasonable Investor Was Erroneous and Prejudicial ...................5

    D.    Usurping the Jury's Role to Consider Government Misconduct Was Prejudicial Error 6

II.     IMPROPER STATEMENTS TO THE VENIRE WERE UNFAIRLY PREJUDICIAL ...7

III.    ERRONEOUS EVIDENTIARY RULINGS HAD A PREJUDICIAL EFFECT ON THE JURY'S VERDICT ....................................................................................................................7

    A.    Admitting Hearsay Statements Made By Ascendant Employees Against Mr. Gentile Was Erroneous and Unfairly Prejudicial .................................................................................8

    B.    The Court's Other Evidentiary Rulings Were Erroneous and Unfairly Prejudicial ......9

        1.    Excluding Evidence and Testimony Regarding the Due Diligence Requirements of Broker-Dealers and Registered Investment Advisors Was Erroneous and Unfairly Prejudicial ...................................................................................................................10

        2.    Admitting Evidence Regarding Auditor's Resignation and Delays in Issuing Audited Statements and K-1s Was Erroneous and Unfairly Prejudicial........................11

        3.    Admitting Privileged and Confidential Conversations Involving Mr. Gentile and His Lawyer Was Erroneous and Unfairly Prejudicial............................................................12

        4.    Admitting Evidence of Fees Earned by Mr. Gentile Unrelated to the Three At-Issue Funds Was Erroneous and Unfairly Prejudicial ..............................................................13

        5.    Admitting an Image Entitled "Payment to GPB 2015 Automotive Portfolio [on] May 20, 2016" Was Erroneous and Unfairly Prejudicial ........................................................13

        6.    Admitting the Draft Transcript of a Supposed Pre-Recording of Mr. Gentile's Investor Transcript Was Erroneous and Unfairly Prejudicial.........................................................14

        7.    Precluding the Defense from Admitting Evidence of Fund Performance After December 2018 Was Erroneous and Unfairly Prejudicial .................................................15

IV.    THE GOVERNMENT IMPERMISSIBLY AMENDED OR VARIED THE INDICTMENT ....................................................................................................................16

A.     The Government Constructively Amended the Indictment .......................................16

B.     The Government's Trial Evidence Constituted a Prejudicial Variance from the Indictment...................................................................................................................17

**CONCLUSION** ..............................................................................................................**18**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*LanFranco v. Murray*,
  313 F.3d 112 (2d Cir. 2002) ..................................................................................18

*United States v. Adkinson*,
  135 F.3d 1363 (11th Cir. 1998) ..............................................................................3

*United States v. Archer*,
  977 F.3d 181 (2d Cir. 2020) ....................................................................................1

*United States v. D'Amelio*,
  683 F.3d 412 (2d Cir. 2012) ..................................................................................17

*United States v. Dellinger*,
  472 F.2d 340 (7th Cir. 1972) ...................................................................................7

*United States v. Fawley*,
  137 F.3d 458 (7th Cir. 1998) ...................................................................................4

*United States v. Ferguson*,
  676 F.3d 260 (2d Cir. 2011) ....................................................................................4

*United States v. Gipson*,
  553 F.2d 453 (5th Cir. 1977) ...................................................................................5

*United States v. Harra*,
  985 F.3d 196 (3d Cir. 2021) ....................................................................................4

*United States v. Holley*,
  942 F.2d 916 (5th Cir. 1991) ...................................................................................4

*United States v. Kaiser*,
  609 F.3d 556 (2d Cir. 2010) ....................................................................................2

*United States v. Kopstein*,
  759 F.3d 168 (2d Cir. 2014) ....................................................................................1

*United States v. Kosinski*,
  976 F.3d 135 (2d Cir. 2020) ....................................................................................2

*United States v. Litvak*,
  889 F.3d 56 (2d Cir. 2018) .......................................................................................5

*United States v. Petit*,
    No. 21-543, 2022 WL 3581648 (2d Cir. Aug. 22, 2022) ......................................................2

*United States v. Rosa*,
    17 F.3d 1531 (2d Cir. 1994) ...........................................................................................15

*United States v. Salmonese*,
    352 F.3d 608 (2d Cir. 2003) ...........................................................................................17

*United States v. Sayre*,
    434 F. App'x 622 (9th Cir. 2011) ...................................................................................5, 6

*United States v. Schor*,
    418 F.2d 26 (2d Cir. 1969) ...............................................................................................7

*United States v. Shaoul*,
    41 F.3d 811 (2d Cir. 1994) ...............................................................................................4

*United States v. Young*,
    470 U.S. 1 (1985) .............................................................................................................6

*United States v. Zingaro*,
    858 F.2d 94 (2d. Cir. 1988) ...........................................................................................17

**Rules**

Fed. R. Crim. P. 33 ...............................................................................................................1

Fed. R. Evid. 401(a) ..............................................................................................................8

Defendant David Gentile ("Mr. Gentile") respectfully submits this reply memorandum in further support of his motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, ECF Nos. 490, 490-1 (the "Motion" or "Mot.").[1]

## ARGUMENT

The Government acknowledges that a court may grant a new trial pursuant to Federal Rule of Criminal Procedure 33 if it would be a "manifest injustice" to let the verdict stand. Mot. at 1 (citing *United States v. Archer*, 977 F.3d 181, 188 (2d Cir. 2020)); Opp. at 6. For the reasons described below, Mr. Gentile has established and the Government fails to refute that the verdict is a miscarriage of justice. The convictions therefore should be vacated and a new trial granted.

## I.    ERRONEOUS JURY INSTRUCTIONS COMPROMISED THE VERDICT

As set forth in greater detail in the Motion, Mr. Gentile has established that his right to due process under the Fifth Amendment was compromised by erroneous jury instructions that were unfairly prejudicial and confusing. *See United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014). The Government's arguments in response fail.

### A.    The Willfulness Instruction Was Erroneous and Prejudicial

The Government claims that the willfulness element of securities fraud (Counts One and Two) does not include awareness of unlawfulness, and that willfulness is not a required element of wire fraud (Counts Four and Five). These arguments fail for at least three reasons.

*First*, the jury should have been instructed that willfulness requires awareness the conduct is unlawful. The Second Circuit requires that, to establish a "willful" violation of a statute, the Government must prove the defendant acted with "knowledge that his conduct was unlawful."

---

[1] References to the Government's Omnibus Opposition to the Motion, ECF No. 499, are denoted as the "Opposition" or "Opp." Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion. Mr. Gentile also joins in and incorporates the arguments in Defendant Jeffry Schneider's reply memorandum to the extent they apply to Mr. Gentile.

*United States v. Kosinski*, 976 F.3d 135, 154 (2d Cir. 2020); *see also United States v. Petit*, No. 21-543, 2022 WL 3581648, at *4 (2d Cir. Aug. 22, 2022). The Government wrongly argues that the instruction was correct in requiring merely a "bad purpose," relying primarily on a case pre-dating *Kosinski* and a misreading of *Petit*.

The Government's continued reliance on *United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010), is misplaced. Opp. at 122. As explained in the Motion, *Kaiser* was decided ten years before *Kosinski*. Mot. at 4. The Government's principal argument in support of relying on this outdated precedent is that the Second Circuit's recent Summary Order in *Petit* resolved any ambiguity. Opp. at 123. *Petit* did indeed resolve any remaining ambiguity—in Mr. Gentile's favor. There, the Second Circuit stated expressly that *Kosinski* "reaffirmed" that willfulness is present where defendant acts "with the intent to do something that the law forbids," even if he is not aware of the specific law that may be violated. 2022 WL 3581648, at *4. The Circuit contrasted this requirement with the "more heightened standard for showing willfulness through 'knowledge of the specific law that one is violating,'" which is required "for a highly technical statute—such as a provision of the Internal Revenue Code" that is not at issue here. *Id*. The court thus contrasted knowledge that a *specific* law is violated with knowledge that *some* law is violated, not with knowledge that conduct is merely wrongful. The Government ignores this language entirely.

*Second*, the jury should have been instructed that willfulness is a required element of wire fraud. The Government incorrectly claims that Mr. Gentile relies solely on the Sand treatise without decisional support. Opp. at 124. To the contrary, the Motion cites abundant case law in the majority of district courts that deliver the Sand instruction, Mot. at 4–5, including in the Eastern District of New York in *United States v. Nordlicht*, No. 16-CR-640 (BMC), ECF No. 849, at 7155–56 (E.D.N.Y. Mar. 2, 2021). The Government does not address *Nordlicht* or this ample authority

at all and offers no reason to deviate from that authority.

*Finally*, the Government fails to establish that the erroneous willfulness instructions were harmless error. Opp. at 125 n.33. Relying on the Jury Charge, the Government referred the jury to the improper "wrongfulness" standard in its summation. *See, e.g.*, Tr. 6382:8–11 ("We must also prove that the defendants acted with intent to defraud. That means proving that the defendants acted intentionally and deliberately, knowing that what they were doing *was wrong*, and intending to deceive other people."). The jury thus was instructed to consider the lower standard, when it should have been required to consider the correct, heightened standard, requiring a new trial.

## B. <u>Failure to Require Unanimity as to a False Statement Was Erroneous and Prejudicial</u>

The Government does not contest that the Second Circuit has not yet addressed whether unanimity is required as to at least one false statement underlying an alleged scheme to defraud. Nor can it. The Government's attempt to bat away the reasoning of other circuits fails, and unanimity should have been required especially due to the Government's ever-shifting theories.

The Government fails to distinguish *United States v. Adkinson*, 135 F.3d 1363 (11th Cir. 1998), which is directly on point. In *Adkinson*, the Eleventh Circuit held that where the charged offense involved a scheme to defraud, as it does here, unanimity was required as to the overt acts alleged to support the scheme. 135 F.3d at 1377. In response, the Government offers only that *Adkinson* involved a "unique set of circumstances" and the jury was left to "parse 227 overt acts." Opp. at 126. But that is exactly what the Government asked the jury to do here—parse a variety of alleged false statements to find a scheme to defraud. *See, e.g.*, Tr. 6460:4–14 (the Government arguing in closing that they have "walked through lies that the Ascendant reps unknowingly conveyed to financial advisors at the direction of the defendants," "misleading statements in the marketing materials," "lies in the PPMs," and "lies communicated directly by the defendants to

investors at due diligence events").

Nor does the Government distinguish *United States v. Harra*, 985 F.3d 196 (3d Cir. 2021). There, while the Third Circuit did vacate the defendants' conviction and grant a new trial because the instructions failed to distinguish between two legal theories, one of which was improper, it was not the only reason the Circuit vacated the conviction as the Government suggests. Opp. at 126. The Third Circuit also vacated the defendants' conviction because of an improper unanimity instruction. 985 F.3d at 224–25. In fact, contrary to the Opposition's claim that the "Third Circuit did not require the unanimity instruction Gentile now demands," Opp. at 126, the court conceptually endorsed the unanimity instruction requested here: "the jury here was given only a general unanimity instruction, not the specific instruction that *might have avoided* 'a composite theory of guilt, producing twelve jurors who unanimously thought the defendant was guilty but who were not unanimous in their assessment of which act supported the verdict.'" 985 F.3d at 224–25 (emphasis added).[2]

Moreover, both cases cited in the Opposition support that a specific unanimity instruction would have ensured a "just result." *See* Opp. at 126 (citing *United States v. Ferguson*, 676 F.3d 260, 280 (2d Cir. 2011) (upholding general unanimity instruction for case involving four theories of liability but noting, "[a]t the same time, the assurance of a just result would have been reinforced if the [specific unanimity] instruction were given); *United States v. Shaoul*, 41 F.3d 811, 817–18 (2d Cir. 1994) (upholding general unanimity instruction as to conspiracy and mail fraud charges under plain error standard as raised for the first time on appeal, noting "[e]ven in circumstances where it might have been advisable as a matter of sound policy to give 'specific' unanimity

---

[2] The Government fails to address the other cases—*United States v. Fawley*, 137 F.3d 458 (7th Cir. 1998); *United States v. Holley*, 942 F.2d 916 (5th Cir. 1991)—cited in the Motion requiring unanimity with respect to at least one false statement to support a perjury conviction. Mot. at 6–7. But the reasoning of these cases equally applies here: to ensure that the jury is unanimous in their assessment of which act (*i.e.*, alleged false statement) supported the verdict.

instructions, we have held that failure to give such instructions does not constitute plain error.")).

The Government does not contest that the complexity of this case and the myriad purportedly false statements alleged by the Government at trial amplified the risk of confusion among the jurors. Because the jury was not required to agree on what specifically was false and misleading, the Government was not required to present a coherent theory of the purported misstatements or omissions and Mr. Gentile was not able to confront the proof adduced (or not adduced). This failure to give a specific unanimity instruction means there may have been "significant disagreement among the jurors" as to what Mr. Gentile did, violating his right to a unanimous verdict. *See United States v. Gipson*, 553 F.2d 453, 458–59 (5th Cir. 1977).

## C. Failure to Define a Reasonable Investor Was Erroneous and Prejudicial

Mr. Gentile's proposed instruction that the jury must consider the sophistication of the reasonable investor is not merely "additional gloss," as the Government suggests, Opp. at 132, and was especially necessary in light of the "gullible investor" instruction. The language proposed by Mr. Gentile that the standard of a reasonable investor "may vary with the nature of the participants involved in a particular market," Mot. at 8, is consistent with the Second Circuit's guidance that the standard "may vary . . . with the nature of the traders involved in the particular market," regardless of the wording used in that case. *United States v. Litvak*, 889 F.3d 56, 64–65 (2d Cir. 2018); *see also Nordlicht*, No. 16-CR-640 (BMC), ECF No. 849 at 7147. The Government conveniently omits this language in its discussion of *Litvak*. Opp. at 132–33.

Moreover, the Ninth Circuit case, *United States v. Sayre*, 434 F. App'x 622 (9th Cir. 2011), that the Government relies upon actually demonstrates the need for the instruction here. Opp. at 133. In *Sayre*, the circuit court held a "reasonable investor" instruction did not require further definition where the charge involved alleged omissions in deciding whether to "buy, sell, or hold eConnect *stock*." *Id*. at 625 (emphasis added). Trading in publicly available stocks is

exactly the type of investor that is distinguished from the sophisticated, accredited investors at issue here, who confirmed they were familiar with the risks of investing in illiquid markets like the GPB Funds. Thus, although the type of investing in *Sayre* may not have required a definition of a "reasonable investor," the type of investing here did.

### D. Usurping the Jury's Role to Consider Government Misconduct Was Prejudicial Error

The jury should have been allowed to consider evidence of the Government's motivation in assessing whether there was reason to doubt the credibility of the Government's witnesses. The Court usurped that role by instructing the jury that there was "no evidence" of misconduct, requiring a new trial. Mot. Ex. A at 17.

The Government's response concedes the point. The Government states that "*the Court found* there was no evidence in the record of the government operating under an improper motive." Opp. at 139 (emphasis added). But, respectfully, it was not for the Court to make this finding and instruct the jury, as it did, that there was "no evidence" of improper motive. Whether or not the Government operated under an improper motive is precisely the issue the jury should have been allowed to consider.

The Government seeks to expand the limited holding of *United States v. Young*, 470 U.S. 1 (1985), which, as the Motion explained, considered only the "limited issue of whether a reviewing court could address Government misconduct absent a timely objection." Mot. at 11, n.6; Opp. at 138 n.39. The Government raises the guidance in the *Young* decision that judges should "deal with" improper argument from defense counsel. Opp. at 138 n.39. This guidance is *dicta* and separate from the need for a jury instruction such as the one requested here.

As established in the Motion and Mr. Gentile's Motion to Dismiss the Indictment Based on Prosecutorial Misconduct, ECF Nos. 489, 489-1, there is ample evidence of improper motive,

including multiple last-minute coaching sessions resulting in new, undisclosed testimony that often contradicted the witnesses' prior statements. Mot. at 11. The jury should have been allowed to consider this evidence in weighing that testimony and the credibility of the witnesses generally; thus, the instruction that there was "no evidence" of improper motive was prejudicial error.

## II.   IMPROPER STATEMENTS TO THE VENIRE WERE UNFAIRLY PREJUDICIAL

Magistrate Judge Bloom implanted bias in the venire during jury selection by describing the prosecuting United States Attorney for the Eastern District of New York as a "great man." The Government relegates its response to this serious and very real concern to a footnote. Opp. at 118 n.32. But the Government cannot bury the concern, and a new trial is required to ensure Mr. Gentile's right to an impartial jury. Instead of even attempting to defend the comment itself, the Government points to the context and argues that any bias was remedied. Opp. at 118 n.32. But it was not. Magistrate Judge Bloom's further statements that all parties are equal hardly compensates for *praise* for just one advocate—the prosecutor.

The jury instruction that the United States is not entitled to greater consideration than defendants is equally unavailing. *Id.* Lip service to equal status and consideration does not overcome the statement that the prosecutor is a "great man." *Cf. United States v. Schor*, 418 F.2d 26, 30 (2d Cir. 1969) (reversing conviction and ordering new trial where trial court's conduct may have affected the verdict). The comment was made at the start of voir dire, and it would have been prudent and practicable to begin again. *See, e.g.*, *United States v. Dellinger*, 472 F.2d 340, 370 (7th Cir. 1972) (court should "do what [is] reasonably practicable" to prevent unfairness).

## III.   ERRONEOUS EVIDENTIARY RULINGS HAD A PREJUDICIAL EFFECT ON THE JURY'S VERDICT

For the reasons set forth in the Motion, the seven erroneous evidentiary rulings—individually and collectively—identified by Mr. Gentile compromised the reliability of the verdict,

requiring reversal and a new trial.

A. **Admitting Hearsay Statements Made By Ascendant Employees Against Mr. Gentile Was Erroneous and Unfairly Prejudicial**

In the Motion, Mr. Gentile identified critical hearsay statements made by six Ascendant employees that the Court improperly admitted as statements adversely attributable to Mr. Gentile. Mot. at 18–22. Even under a theory that these statements were not offered for the truth but as relevant to the total mix of information available to potential investors, the Government conceded before trial (and the Court agreed) that it was required to establish a principal-agency relationship for admittance. *Id.* at 20. At trial, however, the Government offered no foundation for how any of these Ascendant employees were in a principal-agency relationship with Mr. Gentile, resorting instead to a vague argument that Mr. Gentile's and Mr. Schneider's two separate companies functioned as one, even though the Government could not cite any evidence that these Ascendant employees were answerable to Mr. Gentile. *Id.* at 21. Tellingly, the Opposition concedes that if the Court considers this agency issue—as it respectfully should—there must be evidence of that relationship. Opp. at 86 n.19. But the only evidence the Opposition cites in support does not tie any Ascendant employees' statements to Mr. Gentile.[3]

Faced with this evidentiary shortfall, the Government attempts to isolate the Court's focus only on whether the statements met the Fed. R. Evid. 401(a) standard of relevance, incorrectly claiming whether Mr. Gentile was aware of or authorized the statements as going only to weight. Opp. at 85–90. But this ignores the fact that relevance itself requires that these statements are "made by agents of the defendants." May 23, 2024 Pretrial Conference Tr. 38:3–39:14. In other

---

[3] The Opposition also alleges more generally that there was evidence purportedly showing the defendants' awareness of false information being provided to investors (*e.g.*, reference to testimony about "defendants' attendance at due diligence events," Opp. at 89), but this too falls short of the requisite evidence required to establish that the Ascendant employee statements at issue were made as agents of Mr. Gentile.

words, if that relationship between the Ascendant employees and Mr. Gentile does not exist, then the statements are irrelevant as to him, and therefore inadmissible.

Although the Court recognized that requirement in principle before trial, *id.*, it failed to follow it when admitting those statements and allowing the jury to adversely attribute them to Mr. Gentile without requiring the Government to establish the foundation of a principal-agent relationship,[4] either at the time of admittance or at a later time during trial. Mr. Gentile's counsel's ability to argue the weight does not overcome the fundamental point that it was unfairly prejudicial to Mr. Gentile to allow the jury to hear those statements without the appropriate foundation establishing relevance. Accordingly, the Court's admittance of Ascendant employee statements against Mr. Gentile was an unfairly prejudicial and harmful error; those statements should have been struck against Mr. Gentile and the jury instructed to disregard them. *See* Mot. at 22. This improper evidentiary ruling warrants a new trial.

### B.  **The Court's Other Evidentiary Rulings Were Erroneous and Unfairly Prejudicial**

The Motion details six other claims of erroneous evidentiary rulings. As set forth in the Motion, Mr. Gentile reasserts and reincorporates prior arguments made on these issues. In its Opposition, the Government generally relies only on the prior ruling of the Court on these issues and states in conclusory fashion that even if there was error, it was harmless. Mr. Gentile briefly summarizes key points in reply below, and otherwise respectfully directs the Court to its Motion, which was largely unaddressed by the Government in its Opposition. Ultimately, as previously detailed, the impact those erroneous evidentiary rulings had, individually and cumulatively, on the verdict underscores the harm and prejudice suffered by Mr. Gentile, necessitating a revisiting of

---

[4] The Government also failed to establish that there was any alternative co-conspirator foundation for admitting these statements. Mot. at 21–22. Accordingly, the Government failed to prove the "connection" between the Ascendant employees' statements and Mr. Gentile despite its acknowledgement that it was required to do so. Opp. at 88–89.

those arguments in the Motion and, as respectfully submitted by Mr. Gentile, a new trial.

> **1. Excluding Evidence and Testimony Regarding the Due Diligence Requirements of Broker-Dealers and Registered Investment Advisors Was Erroneous and Unfairly Prejudicial**

The Opposition argues that the Court properly excluded the due diligence requirements of broker-dealers and registered investment advisors because such evidence was irrelevant and, even if relevant, any such error was harmless. The Government's arguments are without merit.

*First*, the Opposition fails to explain how these due diligence requirements are inadmissible, instead arguing that the Motion failed to explain how excluded testimony regarding the legal due diligence requirements and standard due diligence practices of broker-dealers and RIAs "would have any bearing on Gentile's state of mind and thus any relevance . . . of his [alleged] intent to defraud." Opp. at 93. But the Motion is clear on this point: "Mr. Gentile's knowledge that at least some of these broker-dealers and RIAs would conduct their own due diligence . . . would have negated any inference that Mr. Gentile intended, let alone believed he would even be able, to defraud accredited or qualified investors concerning the source of the three funds' distributions or the extent of the funds' actual coverage." Mot. at 16. Broker-dealers and RIAs were required *by law* to fully vet the GPB Funds before recommending them to clients, which would have necessarily required reviewing the PPMs and (at a minimum) the audited financial statements, which revealed, among other things, that: (i) the GPB Funds had the absolute right and authority to include investor capital in distributions, *see, e.g.*, GX-8258-B-073–074; and (ii) the GPB Funds continued to pay distributions despite audited financial statements showing losses and, thus, that distributions could not have been funded solely by profits, *see, e.g.,* DX-IR-003–004, DX-IY-003–004. The jury should have been permitted to evaluate whether Mr. Gentile could have realistically intended to deceive investors when he knew that sophisticated intermediaries were obligated by law to review documents that revealed their terms and financial condition.

10

*Second*, this critical error was not harmless. Contrary to the Opposition's claim, Mr. Gentile's counsel's ability to refer only to due diligence actually conducted by broker-dealers and RIAs, and not the due diligence they were obligated by law to perform, does not mean the Court's ruling was harmless error. Indeed, at least one broker-dealer witness, Anthony LaGiglia, testified that he did not review any of the GPB Funds' audited financial statements in detail before recommending the investment to his clients, in a complete abdication of his due diligence obligations. Tr. 3694:6–3695:16; *see also, e.g.*, Tr. 1810:2–25 (Matthew Crafa testifying that audited financials are "not the first thing [he] would go to" when reviewing an investment). And witness after witness took the stand and testified that they had absolutely no idea that investor capital could be included in distribution payments, despite this being plainly disclosed in the PPMs. *See, e.g.*, Tr. 183:16–21 (Marvin Jones testifying that he "would not have invested" if he had known that distributions could be paid from return of capital); Tr. 5039:21–25 (Morey Goldberg testifying the same).

This left the jury with the impression that these documents, which indisputably revealed the truth, were unimportant, of little weight under the total mix of information materiality standard, and easy places to sneak in information undetected. That broker-dealers and RIAs were *legally required* to review these documents negates the reasonableness of any such inference by the jury, thus compromising the verdict and necessitating a new trial.

### 2. Admitting Evidence Regarding Auditor's Resignation and Delays in Issuing Audited Statements and K-1s Was Erroneous and Unfairly Prejudicial

The Motion reasserts arguments from prior submissions that the Court improperly admitted evidence and testimony—covering an irrelevant time period—about an auditor's resignation, withdrawal of certain audited financial statements, and GPB's delays in issuing audited financial statements and K-1s. Mot. at 17–18. The Opposition relies on the Court's prior improper ruling

11

and suggests that any potential prejudice was "adequately addressed by the Court's curative instructions." Opp. at 95. But this ignores Mr. Gentile's argument that those instructions were insufficient. As the Motion explains, the instructions "did not sufficiently mitigate the prejudicial error" because "those instructions did not cabin properly the temporal scope of the issues, nor did it negate the overall prejudice and harm" that arose from allowing the Government to elicit such testimony *repeatedly*. Mot. at 18 n.7.

### 3. Admitting Privileged and Confidential Conversations Involving Mr. Gentile and His Lawyer Was Erroneous and Unfairly Prejudicial

The Court also erred in admitting privileged and confidential communications between Mr. Gentile and James Prestiano, who served as counsel for both GPB and Mr. Gentile personally. Mot. at 22–27. As the Motion notes, Mr. Gentile respectfully reasserts and incorporates the prior arguments he has made on this issue (including those establishing that these communications were privileged as between Mr. Gentile and Mr. Prestiano). Mot. at 24–25.

Among other things, these arguments include the Government's Filter Team's breach of protocol when it shared the at-issue communications with the Prosecution Team without first consulting the defense as it had done for several years prior. In a footnote, Opp. at 96 n.23, the Opposition incorrectly suggests that Mr. Gentile omits the fact that the Filter Team shared the information with the Prosecution Team under a waiver from GPB. But as previously briefed, Dkt. 396 at 4–5, the Filter Team did *not* obtain a waiver from Mr. Gentile to disclose these privileged communications to the Prosecution Team. Mr. Gentile previously sought relief from the Court to address this breach, including an order requiring the Filter Team to submit evidence about its understanding of the agreement it had with GPB on the permissible use of the materials, which could have led to preclusion of some or all of the evidence. *Id.* at 4. Instead, the Court's failure to grant that request, along with its associated admission of privileged communications, created

patently unfair prejudice, necessitating a new trial. Mot. at 22–27.

### 4. Admitting Evidence of Fees Earned by Mr. Gentile Unrelated to the Three At-Issue Funds Was Erroneous and Unfairly Prejudicial

With respect to the Court's erroneous admission of evidence of fees and other income received by Mr. Gentile in connection with funds other than Holdings I, Holdings II, and Automotive Portfolio, the Opposition ignores that, although Mr. Gentile litigated many of these issues pre-trial, they are ripe for reconsideration now given the harm that arose during trial. As previously briefed and reasserted in the Motion, such harm arose because the material is irrelevant, more prejudicial than probative, and creates the false impression that Mr. Gentile personally received more fees than he actually did. Mot. at 27–28. The Opposition incredibly suggests that it cannot understand how such falsities could be unfairly prejudicial to Mr. Gentile despite the Motion's explanation that such matters outside the charged offense improperly amplify the amount purportedly received in connection with alleged fraud. Mot. at 28. That itself is prejudicial to Mr. Gentile, and this was compounded by the Government's further tying of that impression of impropriety to Mr. Gentile's motive. *Id.* Such prejudice affected the core of the Government's case and, by extension, the verdict, which necessitates a new trial.

### 5. Admitting an Image Entitled "Payment to GPB 2015 Automotive Portfolio [on] May 20, 2016" Was Erroneous and Unfairly Prejudicial

The Motion also sets forth Mr. Gentile's position regarding the Court's error in admitting Slide 22 from the analysis of the Government's summary witness, Michael Petron. Mot. at 29–30. Specifically, Slide 22 went beyond the bounds of Rule 1006 by cherry-picking eight account transfers (out of dozens more) in a manner designed to suggest a flow of funds when no flow-of-funds analysis was actually done. As the Government acknowledges, Mr. Petron was not proffered as an expert having completed a tracing analysis, but rather was a summary witness, thus raising significant questions about the accuracy of the presentation of the transfers indicated on the slide.

13

Opp. at 99–100. If there was no tracing analysis performed, then the purportedly "summary" information on the Slide must accurately substitute for voluminous documents under Rule 1006. But here, the display of a limited set of transfers and a suggestion of flow of funds necessarily reflects the conclusions the Government wanted the jury to reach, based on the selective information the Government apparently provided Mr. Petron. Tr. 3875:24–3876:5.

Faced with this reality, the Government resorts to arguing that the fact of having cherry-picked transfers goes only to the weight of the evidence, rather than admissibility. Opp. at 100. But for the reasons stated in the Motion, this goes beyond the bounds of Rule 1006 and was unfairly prejudicial and harmful to Mr. Gentile given the jury's repeated exposure to it. Mot. at 29–30.

### 6. Admitting the Draft Transcript of a Supposed Pre-Recording of Mr. Gentile's Investor Transcript Was Erroneous and Unfairly Prejudicial

As set forth in greater detail in the Motion, GX-8330 is a transcript of a prerecording of a webinar and the Government elicited no evidence that this webinar was ever actually played to investors. Mot. at 30. The Opposition argues two points in response both of which are meritless. Opp. at 102–03. *First*, the Opposition suggests that this was still a statement of a defendant, making the transcript allegedly relevant on its own. But the Government does not, because it cannot, explain the relevance of a recorded statement if it was never actually made to investors—indeed, there is no evidence it was. *Second*, the Opposition nonetheless suggests that there is such evidence. But the evidence cited does not address whether GX-8330 actually was, in fact, played for investors. Notably, the Court provided an instruction making that clear. Tr. 5244:23–5245:2 ("these are being offered . . . not on the theory that this is a statement to an investor that affected what the investor thought[,] [b]ut rather, this is what Mr. Gentile is saying on a recording.").

The Government ignored that instruction and, in its rebuttal, suggested facts not in evidence by claiming that this prerecording was played for investors. The Opposition now attempts to

14

mitigate this impropriety by analogizing its statement to a case involving an "overstatement." Opp. at 104 (citing *United States v. Rosa*, 17 F.3d 1531, 1549 (2d Cir. 1994)). But unlike *Rosa*, where the prosecutor incorrectly overstated the number of days that the price of silver went down (the fact that it went down on at least one day was true), here the Government *misstated* the single, critical fact that the prerecording was played for investors in the absence of any corroborating record evidence.

The Opposition further attempts to mitigate this impropriety by suggesting that Mr. Gentile's counsel somehow had the opportunity to address this misstatement earlier in the trial. But that would have required Mr. Gentile's counsel to have predicted that the Government would take this inappropriate step on rebuttal. The ability to litigate GX-8330's admissibility during trial, leading to the Court's instruction, is not the same as being able to address the Government ignoring the limited purpose for which it was being offered and suggesting facts not in evidence in their rebuttal, because that came *after* the defense's last opportunity to speak to the jury.

### 7. Precluding the Defense from Admitting Evidence of Fund Performance After December 2018 Was Erroneous and Unfairly Prejudicial

Mr. Gentile was also harmed by the Court's preclusion of evidence concerning the GPB Funds' performance after 2018 (the end of the charged conspiracy period). Mot. at 31–32. When set against the Government's presentation of the GPB Funds' loss during the charged conspiracy period, Mr. Gentile's inability to counter that misleading impression was unfairly prejudicial. Had Mr. Gentile been able to offer evidence to show that the GPB Funds were intended to generate, and did generate, long-term value for investors, a juror may have drawn a different conclusion about whether he had the requisite fraudulent intent to harm investors as alleged by the Government. At minimum, given the Government's burden to establish all elements beyond a reasonable doubt, Mr. Gentile should have had the opportunity to fully test the Government's

theory of intent.

## IV.   THE GOVERNMENT IMPERMISSIBLY AMENDED OR VARIED THE INDICTMENT

The Government fails to refute that its theory on rebuttal sufficiently broadened the core criminality alleged so as to constructively amend the Indictment, or at a minimum that it relied on facts materially different than those alleged in the Indictment amounting to a prejudicial variance. Either conclusion requires a new trial.

### A.   <u>The Government Constructively Amended the Indictment</u>

The core criminality alleged in the Indictment concerned specific misrepresentations that the GPB Funds were "fully covered" and that GPB had "no present plans" to use investor capital to pay distributions. Indictment ¶¶ 21–29; Mot. at 33. At trial, Mr. Gentile contested that allegation with undisputed evidence that there was no such misrepresentation, because investor reports plainly showed distributions exceeded funds received (*i.e.*, were not fully covered) and GPB was authorized to use investor capital to pay distributions. Faced with this, on rebuttal, the Government changed course and developed a new theory to salvage its case, arguing that "coverage ratio is not the issue," but instead that the disclosures were not obvious enough, and that distributions should have been paid with "cash profits." Mot. at 33–34.

But none of this is in the Indictment. Indeed, there is no reference in the Indictment to disclosures not being obvious enough. The Government's argument in its Opposition that the nature of the disclosures merely rebutted the defense as to criminal intent is unavailing. Opp. at 113. There is a stark difference between a failure to disclose at all, and a disclosure not being purportedly obvious enough. The Indictment alleged the former, but in rebuttal the Government argued the latter, amounting to constructive amendment.

Likewise, the term "cash profits" does not appear in the Indictment at all. The

Government's attempt to squeeze this theory into the Indictment equally comes up short. The Government argues that it did not suggest that the jury could convict Mr. Gentile for using accrual-based accounting. Opp. at 113. But that is exactly what the Government did—by arguing, during rebuttal, that the (allegedly false) promise was "cash profits. Not accruals." *Id.* (citing Tr. 6874:17–18). This is not the promise alleged in the Indictment, and thus is also a constructive amendment.

These new theories, among others, broadened the scope of the Indictment and permitted conviction based upon "facts wholly unrelated to the facts charged," the standard the Government agrees amounts to constructive amendment. Opp. at 114 (citing *United States v. D'Amelio*, 683 F.3d 412, 420–21 (2d Cir. 2012)). A new trial is therefore warranted.

**B.** **The Government's Trial Evidence Constituted a Prejudicial Variance from the Indictment**

The Government's trial evidence also constituted a prejudicial variance from the Indictment. The Government's focus on the nature of the disclosures and on accrual accounting amounted to offering evidence as to facts "materially different from those alleged in the indictment," *see United States v. Zingaro*, 858 F.2d 94, 98 (2d. Cir. 1988), and was plainly "of a character that could have misled the defendant[s] at the trial," *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003).

Tellingly, the Government responds that any variance was not of a character that could have misled Mr. Gentile but does not even attempt to explain why. Opp. at 116. Nor can it. When Mr. Gentile demonstrated that distributions were paid under an accrual method, and thus the representations were not inaccurate, the Government relied on the very proof that *Mr. Gentile offered* to support a different theory. It argued on rebuttal that Mr. Gentile's proof that GPB had paid distributions under an accrual accounting method showed that GPB had *failed* to pay distributions under a cash method, as it now argued was required for the representations to be

17

accurate. *See* Tr. 6874:17–21 ("the promise was always profits, cash profits. Not accruals, not speculative profits, not something that's going to happen in the future."). It defies reason to believe that Mr. Gentile was not misled, and knowingly offered the very proof used against him. The shift was improper and requires a new trial. *See LanFranco v. Murray*, 313 F.3d 112, 119 (2d Cir. 2002) (a "defendant should not be placed in the precarious position of mounting a challenge to . . . facts [alleged in the Indictment], only to face contradictory facts when the state changes theories.").

The Government equally fails to even address Mr. Gentile's argument that the variance deprived Gentile of his right to be protected against another prosecution for the same offense. Mot. at 41. A new indictment could theoretically charge Gentile with making disclosures that were not clear enough, or using accrual rather than cash basis accounting, further supporting variance.

The Government's shift in theory and proof was prejudicial and requires a new trial.

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in Mr. Gentile's Motion, the Court should grant Mr. Gentile's motion and vacate the guilty verdicts and order a new trial.

Dated: October 29, 2024
New York, New York

Respectfully submitted,

 /s/ Matthew I. Menchel
Matthew I. Menchel
Adriana Riviere-Badell *(admitted pro hac vice)*
**KOBRE & KIM LLP**
201 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
(305) 967-6100
Matthew.Menchel@kobrekim.com
Adriana.Riviere-Badell@kobrekim.com

Jonathan D. Cogan
Sean S. Buckley
A. Zoe Bunnell
Benjamin F. Cooper
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
(212) 488-1200
Jonathan.Cogan@kobrekim.com
Sean.Buckley@kobrekim.com
Zoe.Bunnell@kobrekim.com
Benjamin.Cooper@kobrekim.com

*Attorneys for Defendant David Gentile*